**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:        Justices:
Clifford W. Taylor    Michael F. Cavanagh
                      Elizabeth A. Weaver
                      Marilyn Kelly
                      Maura D. Corrigan
                      Robert P. Young, Jr.
                      Stephen J. Markman

FILED JULY 27, 2006

KRISTINE COWLES,

           Plaintiff-Appellee,

and

KAREN B. PAXSON,

           Intervening Plaintiff-Appellee,

v                                           No. 127564

BANK WEST, f/k/a BANK WEST FSB,

           Defendant-Appellant.

BEFORE THE ENTIRE BENCH

CAVANAGH, J.

The trial court in this class action dismissed intervening plaintiff Karen Paxson's claim against defendant Bank West under the Truth in Lending Act (TILA), 15 USC 1601 *et seq.,* on the basis that it was barred by the statute of limitations. The Court of Appeals reversed, holding, among other things, that the period of limitations applicable to Paxson's claim was tolled under MCR 3.501(F) and that the claim was subject to the rule of relation back of amendments under

MCR 2.118(D). Having concluded that Paxson's claim was not time-barred, the Court of Appeals then held that summary disposition on the merits of Paxson's TILA claim was improper because a question of fact exists concerning whether defendant's document preparation fee was "bona fide" under applicable federal law.

In this matter of first impression, we must first decide whether the filing of a class-action complaint tolls the period of limitations under MCR 3.501(F) for a putative class member's claim when that claim was not pleaded in the initial class-action complaint but arose out of the same factual and legal nexus. We hold that the filing of such a complaint is sufficient to toll the period of limitations as long as the defendant has notice of both the claim being brought and the number and generic identities of the potential plaintiffs. Accordingly, we affirm the Court of Appeals decision that, in this particular case, the intervening plaintiff's claim was not time-barred and, therefore, was improperly dismissed on statute of limitations grounds.

Because the claim was not time-barred in this particular case, we need not decide whether the amendment to the class-action complaint adding this claim related back to the date of the initial filing. Thus, we vacate that portion of the opinion of the Court of Appeals.

Finally, in light of our conclusion that Paxson's claim was not time-barred, we must also address whether summary disposition was nonetheless warranted under MCR 2.116(C)(10) on the merits of Paxson's claim. We agree with the

Court of Appeals that summary disposition would be improper because a question of fact exists over whether the document preparation fee was "bona fide." Therefore, we affirm in part, vacate in part, and remand for further proceedings in the trial court consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

On February 7, 1997, plaintiff Kristine Cowles obtained a residential real estate mortgage loan from defendant Bank West. In connection with this loan, defendant charged Cowles a $250 document preparation fee. The fee was reported on line 1105 of Cowles's United States Department of Housing and Urban Development statement, also known as a HUD-1 settlement statement.

On February 9, 1998, intervening plaintiff Karen Paxson obtained a residential refinancing loan from defendant. Defendant similarly charged Paxson a $250 document preparation fee.

On July 1, 1998, Cowles filed a class-action complaint against defendant, alleging several claims concerning the document preparation fee. The class was defined to include all consumers who obtained real estate loans in Michigan from defendant and who were charged and paid or financed the document preparation fee in the six-year period before the filing of Cowles's class-action complaint. In the complaint, Cowles claimed that defendant's charging of a document preparation fee in connection with the services defendant provided constituted the unauthorized practice of law. Further, the complaint alleged that the document preparation fee violated certain provisions of the Michigan Consumer Protection

Act (MCPA), MCL 445.901 *et seq.* Additionally, the class-action complaint asserted claims of replevin, unjust enrichment, innocent misrepresentation, and negligent misrepresentation.

On August 20, 1998, Cowles amended her complaint to add a claim that the document preparation fee also violated § 1638 of TILA, 15 USC 1638, because the fee was improperly identified on the TILA disclosure form. Cowles alleged that the document preparation fee was identified on the TILA disclosure form as a fee "paid to others on your behalf." But Cowles claimed that defendant retained the fee and did not actually pay it to others. Further, the amended complaint claimed that the document preparation fee exceeded the cost associated with the actual preparation of the final papers. The trial court granted defendant's motion for summary disposition on this TILA claim. Plaintiffs did not appeal that ruling in the Court of Appeals, and they have not appealed that ruling in this Court.

Subsequently, on February 16, 1999, Cowles filed a second amended complaint, adding a claim that defendant's failure to disclose the document preparation fee resulted in a different TILA violation under 15 USC 1605(a)[1] and

---

[1] 15 USC 1605(a) provides:

> Determination of finance charge.
>
> (a) "Finance charge" defined. Except as otherwise provided in this section, the amount of the finance charge in connection with any consumer credit transaction shall be determined as the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit. The finance charge does

(continued…)

4

Regulation Z, 12 CFR 226.4(c)(7).[2]  Cowles claimed that defendant violated §

1605 and Regulation Z because the document preparation fee, as a finance charge,

(…continued)

not include charges of a type payable in a comparable cash transaction.  The finance charge shall not include fees and amounts imposed by third party closing agents (including settlement agents, attorneys, and escrow and title companies) if the creditor does not require the imposition of the charges or the services provided and does not retain the charges.  Examples of charges which are included in the finance charge include any of the following types of charges which are applicable:

(1) Interest, time price differential, and any amount payable under a point, discount, or other system of additional charges.

(2) Service or carrying charge.

(3) Loan fee, finder's fee, or similar charge.

(4) Fee for an investigation or credit report.

(5) Premium or other charge for any guarantee or insurance protecting the creditor against the obligor's default or other credit loss.

(6) Borrower-paid mortgage broker fees, including fees paid directly to the broker or the lender (for delivery to the broker) whether such fees are paid in cash or financed.

[2] 12 CFR 226.4 provides in relevant part:

(c) Charges excluded from the finance charge. The following charges are not finance charges:

* * *

(7) Real-estate related fees.  The following fees in a transaction secured by real property or in a residential mortgage transaction, if the fees are bona fide and reasonable in amount:

(continued…)

was not included in the loan's annual percentage rate (APR). Further, Cowles

alleged that the document preparation fee did not relate to document preparation.

The trial court then certified the class as described in Cowles's second amended

complaint, and Cowles acted as the class representative.[3] Notice was subsequently

sent to the class members, and a list of all class members who opted out of the

class was then filed in the trial court. Notably, Paxson did not opt out of the class.

---

(…continued)

      (i) Fees for title examination, abstract of title, title insurance, property survey, and similar purposes.

      (ii) Fees for preparing loan-related documents, such as deeds, mortgages, and reconveyance or settlement documents.

      (iii) Notary and credit report fees.

      (iv) Property appraisal fees or fees for inspections to assess the value or condition of the property if the service is performed prior to closing, including fees related to pest infestation or flood hazard determinations.

      (v) Amounts required to be paid into escrow or trustee accounts if the amounts would not otherwise be included in the finance charge.

[3] The order initially granting class certification defined the class as follows:

      All persons who obtained a real estate loan [secured by a first mortgage] from Bank West covering real property located within the State of Michigan; who were charged and who paid and/or financed a "document preparation" fee in connection with the transaction; which fee was imposed by Bank West or its agents and was disclosed on Line 1105 of the HUD-1 (including HUD-1A) Settlement Statement; and which fee was paid to or otherwise inured to the benefit of Bank West; and/or which fee was not disclosed as a part of the Finance Charge in the Federal Truth-In-Lending Disclosures.

6

Defendant moved in the trial court for reconsideration of the court's decision to certify the class as described in Cowles's second amended complaint. Defendant asserted that Cowles's individual TILA claim under § 1605 was time-barred by the applicable statute of limitations, 15 USC 1640(e),[4] because the § 1605 claim was pleaded more than one year after Cowles closed on her loan. Accordingly, defendant maintained that Cowles could not represent the class with respect to the § 1605 claim. Moreover, defendant moved for summary disposition of the § 1605 claim, as well as the other claims contained in the second amended complaint.

After defendant filed its motion for reconsideration, Paxson moved to intervene and serve as the class representative for the § 1605 claim. Paxson's motion to intervene was granted, and she filed a complaint as an intervening plaintiff. The trial court granted defendant's motion for summary disposition on Cowles's § 1605 claim, reasoning that Cowles's § 1605 claim was time-barred. Further, the trial court granted defendant summary disposition of all claims contained in the second amended complaint, *except* Paxson's § 1605 claim.

Paxson and defendant then filed cross-motions for summary disposition on the § 1605 TILA claim. The trial court opined that Paxson's § 1605 claim was

---

[4] 15 USC 1640(e) provides in relevant part: "Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation."

meritorious. But the trial court ultimately ruled that the claim was time-barred under § 1640(e) because it was pleaded in the second amended complaint more than one year after Paxson's claim accrued—the date she closed on her loan. The trial court concluded that Paxson's claim was not tolled from the time Cowles filed the initial class-action complaint and that the second amended complaint did not relate back to the date of the initial complaint. Thus, the trial court revoked class certification with respect to the TILA claim brought under § 1605. Paxson appealed.

In a split, published decision, the Court of Appeals affirmed in part, reversed in part, and remanded the matter to the trial court. *Cowles v Bank West*, 263 Mich App 213; 687 NW2d 603 (2004). Relying on *Newton v Bank West*, 262 Mich App 434; 686 NW2d 491 (2004), the Court of Appeals affirmed the trial court's grant of summary disposition on the MCPA claims because defendant's residential mortgage loan transactions were exempt from the MCPA by virtue of MCL 445.904(1)(a).[5] But the Court of Appeals held that the trial court improperly dismissed Paxson's TILA claim under § 1605 on statute of limitations grounds. The Court of Appeals observed that whether the amendment of a class-action

---

[5] The Court of Appeals also dismissed plaintiffs' unauthorized practice of law claim. The Court of Appeals held this issue in abeyance pending this Court's decision in *Dressel v Ameribank*, 468 Mich 557; 664 NW2d 151 (2003). In *Dressel*, we held that a bank does not engage in the unauthorized practice of law when it completes standard mortgage forms and charges a fee for this service. Thus, in light of *Dressel*, the Court of Appeals dismissed the unauthorized practice of law claim by an order.

complaint to add new theories of liability relates back to the filing of the initial complaint for purposes of the period of limitations was an issue of first impression. Nonetheless, the Court of Appeals reasoned that under MCR 3.501(F), the period of limitations for Paxson's TILA claim was tolled by the filing of the initial complaint. The Court of Appeals concluded that tolling was proper because Paxson was a member of the class described in the original complaint, the class was ultimately certified, and none of the circumstances set forth in MCR 3.501(F)(2) occurred that could have caused the period of limitations to resume running against Paxson or any other class member.

Next, the Court of Appeals concluded that amendments to a class-action complaint adding claims arising out of the conduct, transaction, or occurrence alleged in the original complaint relate back to the date of the initial filing when the period of limitations was tolled. The Court of Appeals reasoned that nothing in the court rules dealing with representative actions suggests that those rules are comprehensive. Accordingly, the Court of Appeals turned to MCR 2.118(D), the general court rule that provides that an amendment adding a claim relates back to the date of the original pleading if the claim added in the amendment arose of the conduct, transaction, or occurrence set forth, or attempted to be set forth, in the original pleading. According to the Court of Appeals, because the cause of action in this case was always to recover damages related to the document preparation fee charged in connection with residential mortgage loans, the TILA claim brought

9

under § 1605 related to the same conduct or transaction as pleaded in Cowles's initial class-action complaint.

Further, the Court of Appeals opined that nothing in the United States Supreme Court's precedent dealing with the tolling doctrine compels the conclusion that the relation-back rule is inapplicable in the class-action context. See, e.g., *American Pipe & Constr Co v Utah*, 414 US 538; 94 S Ct 756; 38 L Ed 2d 713 (1974), and *Crown, Cork & Seal Co, Inc v Parker*, 462 US 345; 103 S Ct 2392; 76 L Ed 2d 628 (1983). Rather, the Court of Appeals reasoned that Paxson and other members of the potential class were entitled to rely on the existence of the class action and attendant tolling provisions to protect their rights with respect to claims associated with the document preparation fee. Moreover, the Court of Appeals concluded that if it were to hold otherwise, class members for whom the period of limitations may expire could only protect their rights by intervening or filing separate actions—something the class-action mechanism was intended to avoid.

Additionally, in responding to the Court of Appeals dissent, the Court of Appeals majority opined that its ruling would not unfairly disadvantage defendant because the relation-back doctrine is limited in application and Paxson was not trying to "piggyback" her claim, observing that that there were "no new, repetitive actions filed by any of the plaintiffs in the class." *Cowles*, *supra* at 230. Further, the Court of Appeals observed that if Paxson had filed an individual lawsuit on July 1, 1998—the date of Cowles's initial complaint—alleging the unauthorized

10

practice of law, and later moved to amend to add the TILA claim, there would be no question that the claim would relate back to the date of her original pleading, regardless of whether the period of limitations on the TILA claim had expired. Thus, the Court of Appeals held that MCR 2.118(D) applied in this instance and, thus, Paxson's TILA claim related back to the date of the initial complaint.

In light of its conclusion that Paxson's TILA claim was improperly dismissed, the Court of Appeals next addressed whether summary disposition was nevertheless warranted under MCR 2.116(C)(10). Specifically, the Court of Appeals addressed defendant's argument that the document preparation fee was properly disclosed under Regulation Z, 12 CFR 226.4(c)(7), because the fee was bona fide and reasonable in amount. While the Court of Appeals agreed that there was no question of material fact with respect to the reasonableness of the fee, the Court of Appeals determined that there was a question of material fact whether the fee was bona fide. Pointing to defendant's president's testimony, the Court of Appeals reasoned that there was evidence presenting a material question of fact whether the fee was for a variety of services necessary to take the loan from application to closing or whether the fee was solely for document preparation. Therefore, the Court of Appeals concluded that summary disposition on the merits of the TILA claim was inappropriate.

Defendant sought leave to appeal, and this Court granted leave to appeal. 474 Mich 886 (2005).

11

## II. STANDARD OF REVIEW

The question whether the filing of a class-action complaint tolls the period of limitations for a class member's claim that was not pleaded in the class-action complaint but arose out of the same factual and legal nexus is a question of law. This Court reviews questions of law de novo. *Casco Twp v Secretary of State*, 472 Mich 566, 571; 701 NW2d 102 (2005). Further, this Court reviews de novo a trial court's decision on a motion for summary disposition. *Ostroth v Warren Regency*, *GP, LLC,* 474 Mich 36, 40; 709 NW2d 589 (2006).

## III. ANALYSIS

### A. Tolling

In general, periods of limitations are tolled with regard to all class members upon the filing of a complaint asserting a class action. MCR 3.501(F) provides:

> Statutes of Limitations.
>
> (1) The statute of limitations is tolled as to all persons within the class described in the complaint on the commencement of an action asserting a class action.
>
> (2) The statute of limitations resumes running against class members other than representative parties and intervenors:
>
> (a) on the filing of a notice of the plaintiff's failure to move for class certification under subrule (B)(2);
>
> (b) 28 days after notice has been made under subrule (C)(1) of the entry, amendment, or revocation of an order of certification eliminating the person from the class;
>
> (c) on entry of an order denying certification of the action as a class action;
>
> (d) on submission of an election to be excluded;

12

(e) on final disposition of the action.

(3) If the circumstance that brought about the resumption of the running of the statute is superseded by a further order of the trial court, by reversal on appeal, or otherwise, the statute of limitations shall be deemed to have been tolled continuously from the commencement of the action.

Here, the periods of limitations for Cowles's TILA claim expired on February 7, 1998, one year after she closed on her residential real estate mortgage loan. 15 USC 1640(e). Cowles filed this class-action complaint on July 1, 1998; thus, Cowles's TILA claim was untimely. Further, Cowles did not plead a TILA claim in her initial complaint, but she did plead a TILA claim in the second amended complaint. Accordingly, the first issue we must decide is whether the filing of Cowles's initial complaint within the TILA period of limitations for Paxson's claim, but outside the TILA period of limitations for Cowles's claim, was sufficient to toll the period of limitations for Paxson's claim on the previously unpleaded TILA claim under MCR 3.501(F). The Court of Appeals concluded that the period of limitations was tolled with respect to Paxson's claim. We agree.[6]

_____

[6] Remarkably, Justice Corrigan posits that "[t]he Court of Appeals opinion addressed only whether the relation-back doctrine applied in this case." *Post* at 4. But the Court of Appeals addressed *both* tolling and relation back. *Cowles*, *supra* at 219-231. Further, Justice Corrigan argues that the Court of Appeals did not conclude that Paxson's TILA claim was tolled. This is also incorrect because the Court of Appeals *specifically concluded that the period of limitations was tolled with respect to Paxson's TILA claim*. After noting that plaintiffs' unauthorized practice of law claims were dismissed by its prior order and concluding that

(continued…)

13

summary disposition was proper on the MCPA claims, the Court of Appeals focused on Paxson's TILA claim, noting:

> Plaintiff Paxson next challenges the trial court's grant of summary disposition to defendant *on her TILA claim.* Neither the Michigan Court of Appeals nor the Michigan Supreme Court has decided whether the amendment of a class action complaint to add new theories of liability relates back to the filing of the initial complaint for purposes of computing the expiration of the period of limitations. Thus, whether *Paxson's TILA cause of action* was barred by the period of limitations involves an issue of first impression . . . .

> *The TILA claim* was formally pleaded in Cowles's second amended complaint, which was filed on February 16, 1999. *Defendant argues that the statute of limitations for Paxson and all other class members was not tolled with respect to that claim on that date.* When the second amended complaint was filed, more than one year had passed since *Paxson's TILA claim* accrued on February 9, 1998. Therefore defendant argues that Paxson's claim is barred by the statute of limitations. We disagree.

> MCR 3.501(F)(1) provides that the statute of limitations is tolled with respect to all persons within the class described in the complaint on the commencement of an action asserting a class action. MCR 3.501(F)(2) delineates several circumstances in which the statute of limitation resumes running against class members, specifically, on the filing of a notice of the plaintiff's failure to move for class certification; twenty-eight days after notice of the entry, amendment, or revocation of an order of certification eliminating the person as a member of the class; entry of an order denying certification of the action as a class action; submission of an election to be excluded from the class; or final disposition of the action.

> Paxson was a member of the original class described in the complaint on the commencement of Cowles's original class action. The class was ultimately certified and none of the circumstances of MCR 3.501(F)(2) occurred that could have caused the period of limitations to resume running against Paxson or any other class members. *Thus, we find that the statute of limitations was tolled with respect to Paxson.* [*Id.* at 219-221 (emphasis added).]

(continued…)

14

Thus, we cannot agree with Justice Corrigan that the Court of Appeals was "not referring to Paxson's TILA claim" because this was the only claim that the Court of Appeals was expressly addressing and all of the other claims were previously addressed. *Post* at 4 n 3. Further, in connection with its later relation-back analysis, the Court of Appeals again stated its conclusion that Paxson's TILA claim was tolled, stating, "In reaching our conclusion, we reject the argument that the statute of limitations never tolled on the TILA claims because the period of limitations expired before Cowles's complaint was filed and, thus, she was never a valid class representative for that claim." *Id.* at 230. Accordingly, there is little doubt that the Court of Appeals concluded that Paxson's TILA claim was tolled.

Despite so concluding, the Court of Appeals nonetheless felt compelled to address whether amendments to the complaint related back to the date of the initial filing "*when the statute of limitations was tolled.*" *Id.* at 221 (emphasis added). As we note later in this opinion, however, the class-action tolling doctrine and the relation back of amendments are conceptually different. And because we conclude that Paxson's TILA claim was tolled, it is unnecessary in this particular case to decide whether amendments to the complaint related back to the date of the initial filing for purposes of Paxson's TILA claim.

Moreover, we must note that the parties' arguments in this case mainly focused on tolling. In fact, after the Court of Appeals entered judgment and this Court granted defendant's application for leave to appeal, defendant raised the following issues on appeal:

> 1. Does the filing of a class action lawsuit toll the statute of limitations for a class member's individual claim, where that claim was not, and could not have been, asserted by the class representative?

> \* \* \*

> 2. Should Michigan follow the Truth in Lending Act's plain language and purpose and use an objective test for determining whether a loan document charge is "bona fide" for purposes of the charge's exclusion from a lender's APR computation?

Indeed, defendant's principal arguments focused on tolling. For example, defendant argued that the class-action tolling doctrine should not extend to Paxson's claim because that claim was not and could not have been asserted by Cowles. Defendant further argued that the class-action tolling doctrine applies only if the class member's own claims are identical to those of the representative.

(continued…)

MCR 3.501(F) was modeled after the United States Supreme Court's decision in *American Pipe*. In *American Pipe, supra* at 553-555, the Court held that the filing of a class action tolls the period of limitations for all class members who timely intervene after a court denies class certification. This has come to be

(…continued)

Accordingly, defendant's arguments focused mainly on tolling, and it argued against extending the class-action tolling doctrine in this case. Only after defendant argued that tolling did not apply in this case did defendant argue that relation back was inapplicable. Specifically, defendant argued that the Court of Appeals erred when it relied on the relation back of amendments because such a rationale is inconsistent with and distinct from *American Pipe*. As defendant argued in its brief, "In other words, the very case that MCR 3.501(F) codifies, *American Pipe*, makes clear that the relation-back principle is inapplicable here, because if the principle was available to class members, there would be no need for a tolling doctrine at all."

Justice Corrigan appears well-versed in defendant's relation-back argument and how it relates to defendant's tolling argument, see *post* at 18, but unlike Justice Corrigan, we need not decide this issue in this particular case because we conclude that the class-action tolling doctrine applies. But we must observe that we are puzzled by Justice Corrigan's assertions that the Court of Appeals addressed only the relation back of amendments and that we have mischaracterized the Court of Appeals decision. Simply stated, the Court of Appeals concluded that Paxson's claim was not time-barred because her claim was tolled *and* the amendment related back to the initial class complaint for purposes of computing the period of limitations. Further, and as noted later in this opinion, we acknowledge that the Court of Appeals holding that Paxson's TILA claim was improperly dismissed rested primarily on its conclusion that the relation-back doctrine applied to her claim. But because Paxson's claim was tolled and, thus, not time-barred on the basis of tolling alone, it was unnecessary for the Court of Appeals to decide the relation-back issue, a point with which Justice Corrigan seemingly agrees. See *post* at 5 n 3 ("If the Court of Appeals had been referring to the tolling of Paxson's TILA claim when contending that MCR 3.501(F) applied in Paxson, as suggested by the majority, it would not have needed to address whether the relation-back doctrine applied."). Merely because the Court of Appeals unnecessarily addressed both issues does not mean that tolling was not

(continued…)

known as the class-action tolling doctrine. The Court reasoned that the doctrine was necessary to balance a class member's right to pursue his claim if the class was not certified with a defendant's right to be free from stale claims. *Id*. at 553-554.

> The policies of ensuring essential fairness to defendants and of barring a plaintiff who has slept on his rights are satisfied when, as here, a named plaintiff who is found to be representative of a class commences a suit and thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment. Within the period set by the statute of limitations, the defendants have the essential information necessary to determine both the subject matter and size of the prospective litigation . . . . [*Id*. at 554-555 (citations and quotation marks omitted).]

Further, the Court opined that the class-action tolling doctrine was needed to promote the judicial economy of the class-action mechanism. According to the Court, if the class-action tolling doctrine were not adopted, individual plaintiffs would be forced to intervene or file duplicative protective suits just in case the class was not certified or the action was dismissed on procedural grounds. *Id*. at 553. This would frustrate the purpose of the class-action mechanism, whereby putative class members are encouraged to remain passive during the early stages of the class action. Therefore, "[c]lass members who do not file suit while the class action is pending cannot be accused of sleeping on their rights" because the

_____

(…continued)
addressed at all or that this Court should overreach and analyze the relation-back issue where tolling alone is dispositive.

federal class-action rule "permits and encourages class members to rely on the named plaintiffs to press their claims." *Crown, Cork & Seal*, *supra* at 352-353. Accordingly, the Court in *American Pipe, supra* at 553, reasoned that the class-action tolling doctrine best serves the principal purposes of the class-action procedure—promotion of efficiency and economy of litigation. Indeed, not until the class is certified "does a class member have any duty to take note of the suit or to exercise any responsibility with respect to it . . . ." *Id.* at 552.

In *Crown, Cork & Seal*, the Court later extended the class-action tolling doctrine to class members who file individual actions after class certification is denied. *Crown, Cork & Seal, supra* at 353-354. Notably, Justice Powell authored a concurrence in *Crown, Cork & Seal* that attempted to clarify what he posited was the foundation for the class-action tolling doctrine. In his concurrence, Justice Powell opined that the doctrine would not toll the period of limitations for subsequent claims that were unrelated to the claims asserted in the initial class-action complaint. *Crown, Cork & Seal, supra* at 354-355 (Powell, J., concurring). Concerned that "different or peripheral" claims would not afford a defendant sufficient notice and force the defendant to defend stale claims, Justice Powell opined that *American Pipe* and the class-action tolling doctrine applied where the subsequent claims "'concern the same evidence, memories, and witnesses as the subject matter of the original class suit . . . .'" *Id.* at 354-355 (citation omitted); see also *United Airlines, Inc v McDonald*, 432 US 385, 393 n 14; 97 S Ct 2464; 53 L Ed 2d 423 (1977). Stated differently, Justice Powell opined that unrelated

18

claims "are not protected under *American Pipe* and are barred by the statute of limitations." *Crown, Cork & Seal, supra* at 355.

Some courts have relied on Justice Powell's concurrence and concluded that the class-action tolling doctrine only applies to claims identical to those raised in the initial class-action complaint or claims that could have been raised in the initial complaint. See, e.g., *Weston v AmeriBank*, 265 F3d 366, 367 (CA 6, 2001) ("[T]he statute of limitations for putative class members of the original class is tolled only for substantive claims that were raised, or could have been raised, in the initial complaint."); see also *Raie v Cheminova, Inc*, 336 F3d 1278, 1283 (CA 11, 2003) ("It is not enough for Appellants to rely on only that ambiguous class definition to support their argument for tolling under *American Pipe*; they must demonstrate that their wrongful death action was included in the *Seabury* class action.").

Other courts, however, have embraced Justice Powell's reasoning and instead held that subsequent individual claims filed after class certification is denied need not be identical to the claims in the original class action for tolling to apply. See, e.g., *Tosti v City of Los Angeles*, 754 F2d 1485, 1489 (CA 9, 1985); *Barnebey v E F Hutton & Co*, 715 F Supp 1512, 1528-1529 (MD Fla, 1989). Rather, the subsequent individual claims must share a common factual and legal nexus to the extent that the defendant would likely rely on the same evidence or witnesses in mounting a defense. See, e.g., *Cullen v Margiotta*, 811 F2d 698, 719 (CA 2, 1987); see also *Crown, Cork & Seal*, *supra* at 355 (Powell, J., concurring)

("[W]hen a plaintiff invokes *American Pipe* in support of a separate lawsuit, the district court should take care to ensure that the suit raises claims that 'concern the same evidence, memories, and witnesses as the subject matter of the original class suit,' so that 'the defendant will not be prejudiced.'") (citation omitted). We believe that these latter courts have the better view and reject a rule that requires identical claims for tolling to occur under MCR 3.501(F).[7] Accordingly, under MCR 3.501(F), a class-action complaint tolls the period of limitations for a class member's claim that arises out of the same factual and legal nexus as long as the defendant has notice of the class member's claim and the number and generic identities of the potential plaintiffs.

Our decision underscores the inherent tension that may appear to exist between the class-action mechanism and a statute of limitations. See, e.g., Lowenthal & Feder, *The impropriety of class action tolling for mass tort statutes of limitations*, 64 Geo Wash L R 532 (1996). But this tension was duly considered by this Court in adopting MCR 3.501(F), as well as by the *American Pipe* Court in crafting the class-action tolling doctrine. According to the *American Pipe* Court, statutes of limitations are important to the administration of justice by

---

[7] We must note, however, that some courts have taken a broader position than we are prepared to adopt today. See, e.g., *Appleton Electric Co v Graves Truck Line, Inc*, 635 F2d 603, 609 (CA 7, 1980) ("We are persuaded that implicit in the Supreme Court's American Pipe decision was the Court's determination that 'effectuation of the purpose of litigative efficiency and economy,' [which Rule 23 was designed to perform] transcends the policies of repose and certainty behind statutes of limitations.") (citation omitted).

"'preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.'" *American Pipe*, *supra* at 554 (citation omitted). But as later noted by the Court, the purpose of a statute of limitations is generally satisfied when a class action is filed.

> [A] class complaint "notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment." The defendant will be aware of the need to preserve evidence and witnesses respecting the claims of all the members of the class. Tolling the statute of limitations thus creates no potential for unfair surprise, regardless of the method class members choose to enforce their rights upon denial of class certification. [*Crown, Cork & Seal*, *supra* at 353 (citations omitted).]

In other words, crucial to whether the period of limitations is tolled under the class-action tolling doctrine and MCR 3.501(F) is notice to the defendant of both the claims being brought and the number and identities of the potential plaintiffs. See, e.g., *Rochford v Joyce*, 755 F Supp 1423, 1428 (ND Ill, 1990) ("The statute of limitations will not be tolled for plaintiffs having 'different or peripheral' claims from those in the original class action suit. To ensure fairness, the later action must be similar enough to the earlier action so that the defendants are notified of the substantive claims against them, as well as the number and generic identities of the potential plaintiffs.") (citation omitted).

Here, we believe that the aim of the statute of limitations was met with the filing of Cowles's initial complaint and would not be frustrated by determining

21

that Paxson's TILA claim was not time-barred. The factual bases for Paxson's TILA claim are the same as the factual bases for the claims raised in Cowles's initial class-action complaint. Accordingly, the initial complaint notified defendant of "the number and generic identities of the potential plaintiffs." Further, Paxson's TILA claim involves the same "evidence, memories, and witnesses" as were involved in the putative class action. Moreover, we have a difficult time concluding that Cowles's initial class-action complaint concerning the document preparation fee was insufficient to alert defendant to preserve the evidence regarding the fee and the services provided in connection with the fee. Simply stated, Paxson's TILA claim is not such a "different or peripheral claim" so that tolling is not permitted under MCR 3.501. *Crown, Cork & Seal*, *supra* at 354 (Powell, J., concurring). The allegations in the initial complaint identify this case as a case where it can be seen from the initial complaint, the first amended complaint, the second amended complaint, and Paxson's complaint that the alleged liability is based on the same acts. See, e.g., *McCarthy v Kleindienst*, 183 US App DC 321, 327; 562 F2d 1269 (1977). Therefore, "there can be no doubt that [defendant] received sufficient notice of the contours of potential claims to toll the running of the statute of limitations." *Id*.

Defendant's alleged liability has always been based on the way it reported its document preparation fee and the propriety of the services it provided in connection with the fee. Further, Paxson has always been a member of the described class, and she was a member of the class that was originally certified in

22

the second amended complaint, the complaint that alleged the § 1605 claim. Moreover, Cowles was deemed an inappropriate representative on procedural grounds. Accordingly, we are simply hard-pressed to conclude that defendant was not put on notice of the TILA claim asserted under § 1605 as well as of the number and generic identities of the potential plaintiffs.[8] Thus, our conclusion that the period of limitations applicable to Paxson's TILA claim was tolled by Cowles's initial complaint is consistent with the functional goal of a statute of limitations and does not unduly prejudice defendant.[9]

---

[8] We disagree with Justice Corrigan's characterization of our interpretation of MCR 3.501(F) to bolster her argument that our interpretation would frustrate the purpose of statutes of limitation. First, we do not conclude that every unnamed class member may move to intervene at any time and add any different or peripheral claim. Rather, we conclude that tolling is permitted where the claim arises out of the same factual and legal nexus *and the defendant has notice of both the claim being brought and the number and generic identities of the potential plaintiffs*. Further, as explained earlier, the aim of statutes of limitations are not frustrated under such an interpretation or in this very case because the claim here is not so different or peripheral that tolling is not permitted and defendant had notice of it. In other words, in this particular case, Paxson's TILA claim involves the "same evidence, memories, and witnesses as the subject matter" of the original class action and defendant had notice of "the number and generic identities of the potential plaintiffs." Again, we believe that the aim of statutes of limitations is satisfied in this particular case. Additionally, we observe that the interpretation set forth today must be applied on a case-by-case basis because the relevant inquiry will almost always depend on the facts presented in a given case.

[9] Additionally, the United States Supreme Court noted in *Johnson v Railway Express Agency, Inc*, 421 US 454, 467 & n 14; 95 S Ct 1716; 44 L Ed 2d 295 (1975), that the identicalness of claims played a part in its decision in *American Pipe*. Accordingly, it could be argued that the Court may appear reluctant to extend the class-action tolling doctrine to litigation involving anything other than identical claims. But *Johnson* did not turn on the absence or presence of identical claims. See, e.g., *Mt Hood Stages, Inc v Greyhound Corp*, 616 F2d

(continued…)

23

Importantly, a contrary conclusion—limiting tolling under MCR 3.501(F) to claims identical to those that were asserted or may have been asserted in an initial complaint—would frustrate the very purpose of MCR 3.501. Specifically, the more rigid rule advanced by Justice Corrigan "would encourage and require absent class members to file protective motions to intervene and assert their new legal theories prior to class certification, thereby producing the very results . . . courts seek to prevent by such tolling, *i.e.*, 'court congestion, wasted paperwork and expense.'" *Cullen*, *supra* at 721 (citation omitted).[10] Moreover, and contrary to Justice Corrigan's assertions, Paxson did exactly what was encouraged of her under our court rules—she waited until the dust arguably settled before seeking to

---

(…continued)

394, 403 (CA 9, 1980) ("*Johnson* did not hold that an identical cause of action in both proceedings is prerequisite to tolling."). Rather, *Johnson* shows that notice to the defendant is the central concern with regard to whether tolling occurs, not simply whether an identical claim is subsequently made. Thus, *Johnson* does not preclude tolling here because defendant had sufficient notice of Paxson's TILA claim for purposes of MCR 3.501(F).

[10] Further, MCR 3.501(F) only requires the "assert[ion]" of a class action to trigger tolling. It provides that "[t]he statute of limitations is tolled as to all persons within the class described in the complaint on the commencement of an action *asserting* a class action." (Emphasis added.) One "asserts" a class action by claiming the right to a class action. If, in the end, it turns out that one does not, in fact, have such a right, this does not mean that the class action was not "asserted." Because a person only has to "assert" a class action to toll the period of limitations as to all class members, class members are not obligated to investigate whether the person "asserting" it actually has the right to do so. That is, the class members should be able to fully rely on the "asserting" of the class action, without having to independently determine whether the person "asserting" it possesses standing, whether he has brought claims that are not time-barred, or

(continued…)

24

intervene.  Accordingly, it cannot be fairly said that Paxson slept on her rights, because her claims were ostensibly being pursued by Cowles.  Cowles filed a class action against defendant, and Paxson was included in the class.  Further, Cowles then asserted a TILA violation under § 1638 before the period of limitations on Paxson's individual TILA claim would have expired.[11]  Cowles then amended her complaint to include a § 1605 claim after Paxson's individual claim would have expired, and the trial court certified that class.  But when it later appeared that the trial court was going to reconsider its certification ruling, Paxson then promptly sought to intervene.  Accordingly, Paxson reasonably relied on the class-action mechanism and its corresponding tolling provision.  If we were to hold otherwise, as Justice Corrigan suggests, countless potential class members like Paxson would be forced to file protective suits and, thus, circumvent the whole purpose behind MCR 3.501.  "[U]nless the statute of limitations was tolled by the filing of the class action, class members would not be able to rely on the existence of the suit to protect their rights. . . .  A putative class member who fears that class certification may be denied would have every incentive to file a separate action prior to the expiration of his own period of limitations.  The result would be a needless

---

(…continued)
whether he has set forth every single legal argument that could conceivably have been made.

[11] Notably, even though the claim in the first amended complaint was based on § 1638, Cowles stated in the amended complaint that "[t]he 'Document
(continued…)

multiplicity of actions . . . ." *Crown, Cork & Seal*, *supra* at 350-351. See also

*Devlin v Scardelletti*, 536 US 1, 10; 122 S Ct 2005; 153 L Ed 2d 27 (2002)

("Nonnamed class members are, for instance, parties in the sense that the filing of

an action on behalf of the class tolls a statute of limitations against them. See

*American Pipe*[, *supra*]. Otherwise, all class members would be forced to

intervene to preserve their claims, and one of the major goals of class action

litigation—to simplify litigation involving a large number of class members with

similar claims—would be defeated."). As aptly noted by the United States Court

of Appeals for the Third Circuit:

> The [*American Pipe*] Court was concerned that, if the statute of limitations is not tolled in situations where the district court's ruling on maintenance of a class action is difficult to predict, members of a purported class might be induced to intervene as a matter of self-protection. Such protective intervention by class members might be compelled because those class members who have not intervened by the time the untolled statute of limitations runs would be unable to seek relief individually. The Court therefore reasoned that a rule which would result in the individual intervention of class members and which would "breed" needless duplicative motions was not in keeping with the objectives of the federal class action procedures. [*Haas v Pittsburgh Nat'l Bank*, 526 F2d 1083, 1097 (CA 3, 1975).] [12]

(…continued)
Preparation' fee assessed Plaintiff by Bank West exceeded the costs of preparing the 'final legal papers' . . . ."

[12] The Court of Appeals majority in this case similarly observed:

> In the conclusion of his dissent, Judge O'Connell indicates that he "would also hold that certification of a class only tolls the statute of limitations for claims that originally and properly received

(continued…)

Therefore, the view advanced by Justice Corrigan—limiting MCR 3.501(F) tolling to identical claims that were asserted or may have been asserted in an initial complaint—would frustrate the very purpose of MCR 3.501.

Further, we perceive no sound reason for the limitation that Justice Corrigan would place on MCR 3.501(F). For example, just as the filing of a class action that does not meet *the requirements for class certification* generally tolls the period of limitations with respect to all persons within the class described in the complaint, *American Pipe*, *supra*, the filing of a class action by a person who does not meet *the requirements to serve as the class representative* also tolls the period of limitations. See, e.g., *Birmingham Steel Corp v Tennessee Valley Auth*, 353 F3d 1331, 1333 (CA 11, 2003) (holding that "the district court abused its discretion by decertifying the class without permitting class counsel reasonable time to determine whether a new class representative could be substituted"); *Lynch v Baxley*, 651 F2d 387 (CA 5, 1981) (holding that when the district court determined that the class representative did not have standing it should have allowed a class member with standing to become the new class representative);

(…continued)
certification." This proposition is not supported by citation to authority or by analogy to any authority, and it ignores the purposes of class litigation. If class members cannot rely on the named plaintiff to toll the period of limitations on their claims, each class member will be required to separately bring all claims in his own name on the chance that the representative plaintiff will later be found to have an invalid claim and that the benefit of tolling will not apply. [*Cowles*, *supra* at 228 (citation omitted).]

27

*Haas*, *supra* (holding that the filing of a class action by a class representative without standing tolls the period of limitations with regard to all asserted members of the class and that the amendment of the complaint by the addition of a class member with standing relates back to the original complaint). Simply stated, the *American Pipe* rule has been applied in cases involving almost every conceivable basis on which class action status might be denied or terminated. *Haas*, *supra* (class representative had no standing); *Lynch*, *supra* (class representative had no standing); *In re Crazy Eddie Securities Litigation*, 747 F Supp 850 (ED NY, 1990) (named plaintiffs did not have standing); *American Pipe*, *supra* (lack of numerous class members); *McCarthy*, *supra* (lack of typicality); *Green v United States Steel Corp*, 481 F Supp 295 (ED Pa, 1979) (lack of typicality and commonality of class members); *Gramby v Westinghouse Electric Corp*, 84 FRD 655 (ED Pa, 1979) (lack of adequate representation); *Bantolina v Aloha Motors*, *Inc*, 75 FRD 26 (D, Hawaii, 1977) (withdrawal of class representative); *Goodman v Lukens Steel Co*, 777 F2d 113 (CA 3, 1985) (lack of adequate representation); *Hemenway v Peabody Coal Co*, 159 F3d 255 (CA 7, 1998) (lack of subject-matter jurisdiction); *Tosti*, *supra* (tolling permitted in separate suit where claim was not identical to class action); *Barnebey*, *supra* (tolling permitted for claims not asserted in class action); *In re Linerboard Antitrust Litigation*, 223 FRD 335 (ED Pa, 2004) (tolling permitted in separate class action brought by members who opted out of initial class action and who also brought new state law claims). In this regard, Justice Corrigan's attempt to distinguish these cases is unpersuasive, and her dissent does

28

not adequately explain why a contrary result should be reached in this case in light of those cases.

For example, Justice Corrigan does not adequately explain how, if the filing of a class action that does not meet the requirements for *class certification* nonetheless ordinarily tolls the period of limitations with respect to all persons within the class described in the complaint, *American Pipe*, *supra*, the filing of a class action by a person who does not meet the requirements *to serve as the class representative* somehow does not also toll the period of limitations. Similarly, Justice Corrigan does not adequately explain how, if the filing of a class action by a class representative by someone *without standing* tolls the period of limitation with respect to all persons within the class described in the complaint, *Lynch*, *supra*; *Hass*, *supra*, the filing of a class action by a class representative whose own claim is *time-barred* would not also toll the period of limitations with respect to all persons within the class described in the complaint. Accordingly, rather than adopting Justice Corrigan's questionable limitation, we again observe that the proper focus under MCR 3.501(F), as well as *American Pipe* and its progeny, is on the extent to which the claim arose out of the same factual and legal nexus and whether the defendant had notice of both the claim and the number and generic identities of the potential plaintiffs.[13]

---

[13] Additionally, we must observe that we are puzzled by Justice Corrigan's assertion that "there is nothing to toll" in this case. Justice Corrigan maintains that *Paxson's* TILA could not be tolled because *Cowles's* TILA claim expired "before

(continued…)

Nor are we persuaded by Justice Corrigan's additional argument that allowing "Paxson to now assert a TILA claim on behalf of the class would allow piggybacking of one class action onto another and, thus, tolling of the period of limitations indefinitely." *Post* at 18.[14] Where class certification is denied or terminated on the basis that the *class representative* was inappropriate—i.e., not on the appropriateness of class treatment for the *underlying claims*—tolling is permitted. *McKowan Lowe & Co, Ltd v Jasmine, Ltd*, 295 F3d 380, 389 (CA 3, 2002). Thus, where class certification is denied solely on the basis of the appropriateness on the class representative, "a second class would not be an attempt to relitigate the question of class certification" and, thus, judicial economy and the class mechanism will be furthered. *In re Crazy Eddie Securities Litigation*, 802 F Supp 804, 813 (ED NY, 1992); see also *Catholic Social Services, Inc v Immigration & Naturalization Service*, 232 F3d 1139 (CA 9, 2000); *Yang v Odom*, 392 F3d 97, 105-107 (CA 3, 2004). Such a rule is consistent with

_____

(…continued)
[Cowles] filed her complaint." *Post* at 11. But such an assertion ignores the language of MCR 3.501(F)(1) and the fact that the initial class action complaint was filed *before* the period of limitations had expired on *Paxson's* TILA claim and that *Paxson* was a person within the class described in the complaint. Accordingly, we believe that Justice Corrigan's rationale concerning tolling starts from a faulty premise.

[14] Although Justice Corrigan makes this argument in connection with her analysis on the relation back of amendments, we will address her argument because it also pertains to tolling.

*American Pipe* and its progeny,[15] and it will also prevent the improper piggybacking of class-action claims.

Here, because the initial class action was decertified on grounds other than the appropriateness of the substantive claims for class treatment, Paxson's TILA claim was tolled. Paxson was not "attempting to resuscitate a class that a court [had] held to be inappropriate as a class action." *McKowan*, *supra* at 386. Accordingly, we believe that claims of improper "piggybacking" and "abuse" are unwarranted in this particular case.

Therefore, we hold that under MCR 3.501(F), Cowles's initial class-action complaint tolled the period of limitations for Paxson's TILA claim because her claim arose out of the same factual and legal nexus and defendant had notice of Paxson's TILA claim. We are not prepared to conclude that only identical claims are sufficient for tolling purposes, because such a rule would be at odds with MCR 3.501 itself. Nor are we prepared to hold that class-action tolling may never apply to subsequent class claims, because such a rule would unduly burden the goal of

---

[15] The filing of a class-action complaint puts a defendant on notice "of the need to preserve evidence and witnesses respecting the claims of all the members of the class. Tolling the statute of limitations thus creates no potential for unfair surprise, *regardless of the method the class members choose to enforce their rights upon denial of class certification*." *Crown, Cork & Seal*, *supra* at 353 (emphasis added).

judicial economy and, thus, circumvent the class-action mechanism. Accordingly, we affirm that portion of the decision of the Court of Appeals.[16]

## B. Relation Back

Even though the Court of Appeals concluded that the period of limitations was tolled with respect to Paxson's TILA claim, the Court of Appeals addressed the issue whether the amendment to a class-action complaint adding claims arising out of the conduct, transaction, or occurrence alleged in the original class-action complaint relates back to the date of the initial filing. Moreover, the Court of Appeals holding that Paxson's TILA claim was improperly dismissed rested primarily on its conclusion that the relation-back doctrine applied to her claim. Tolling under MCR 3.501(F), however, is conceptually distinct from relation back under MCR 2.118(D). Therefore, in light of our conclusion that Paxson's TILA claim was not time-barred, whether the second amended complaint relates back to Cowles's initial complaint is not dispositive, and, thus, we need not address this

_____

[16] It should not be obscured by our invocation in this opinion of various federal and state court precedents that, if we were to look at nothing else but MCR 3.501, we would reach the same conclusion. MCR 3.501(F) provides that "[t]he statute of limitations is tolled as to all persons within the class described in the complaint on the commencement of an action *asserting* a class action." (Emphasis added.) The manifest purpose of this provision is to avoid the situation in which each class member must initiate his or her own individual lawsuit to preserve a cause of action. Thus, class members must be allowed to rely upon the "assertion" of a class action without having to independently determine that the person asserting it has a right to do so. Moreover, it can be logically concluded, as we do in this opinion, that neither a too-broad nor a too-narrow identity of claims can be required under this rule.

issue in this particular case. Accordingly, we vacate that portion of the decision of the Court of Appeals.

C. "Bona Fide" and "Reasonable"

Because we agree with the Court of Appeals ultimate conclusion that Paxson's TILA claim was improperly dismissed, we must likewise address whether summary disposition was warranted under MCR 2.116(C)(10). Summary disposition under MCR 2.116(C)(10) is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The court must consider the affidavits, pleadings, depositions, admissions, and documentary evidence submitted in the light most favorable to the opposing party. *Skinner v Square D Co*, 445 Mich 153, 161-162; 516 NW2d 475 (1994). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

The purpose of TILA is to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him . . . ." 15 USC 1601(a). Accordingly, TILA requires lenders, like defendant, to provide a written statement summarizing the loan transaction, including all related finance charges. 15 USC 1605(a). Under TILA, "the amount of the finance charge in connection with any consumer credit transaction shall be determined as the sum of all charges, payable directly or indirectly by the person

33

to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit." *Id*. Section 1605(a) sets forth a list of examples of fees and charges that are properly included in the finance charge. Significantly, 15 USC 1605(e) sets forth a list of certain items that are not properly included in the finance charge, and one of those items is "[f]ees for preparation of loan-related documents." 15 USC 1605(e)(2). Further, Regulation Z, 12 CFR 226.4(c)(7)(ii), provides that fees for preparing loan-related documents are not finance charges and, thus, need not be included in the finance charge "if the fees are bona fide and reasonable in amount[.]"

Here, Paxson claims that defendant violated § 1605 and Regulation Z because defendant's document preparation fee, as a finance charge, was not included in the loan's APR. Specifically, Paxson claims that defendant's document preparation fee was not "bona fide and reasonable in amount" because the fee did not actually relate to document preparation. The Court of Appeals concluded that summary disposition under MCR 2.116(C)(10) was inappropriate because, while there is no question of material fact with respect to the reasonableness of the document preparation fee, a question of fact exists whether defendant's fee was bona fide within the meaning of applicable federal law. We agree and adopt the Court of Appeals following rationale as our own.

> A resolution of the issue involves interpretation of federal law. When construing federal statutes and regulations, we are governed by authoritative decisions of the federal courts. *Bement v Grand Rapids & I R Co*, 194 Mich 64, 65-66; 160 NW 424 (1916). Where no decision on a particular issue has been rendered by the

United States Supreme Court, we are free to adopt decisions of the lower federal courts if we find their analysis and conclusions persuasive and appropriate for our jurisprudence. *Abela v Gen Motors Corp*, 469 Mich 603, 606-607; 677 NW2d 325 (2004).

In *Brannam v Huntington Mortgage Co*, 287 F3d 601 (CA 6, 2002), the plaintiffs argued that the $ 250 document preparation fee was not bona fide and reasonable such that it could be excluded from the finance charge. The court acknowledged that the TILA exempts fees for preparation of loan-related documents from the computation of the finance charge. *Id*. at 603. The Sixth Circuit Court of Appeals considered whether the $ 250 fee was bona fide and reasonable. *Id*. at 603-604. The evidence did not support that the fee covered anything more than document preparation costs. Thus, there was no evidence to support that the fee was not "bona fide" under Regulation Z. *Id*. at 606. With respect to the reasonableness of the $ 250 charge, the court determined that a fee is reasonable if it is for a service actually performed and reasonable in comparison to prevailing practices of the industry in the relevant market. *Id*. The evidence supported that $ 250 was a reasonable document preparation fee for western Michigan. *Id*

In this case, unlike in *Brannam*, there is a question of material fact with respect to whether the fee was "bona fide." The term "bona fide," as used in Regulation Z, is not defined. 12 CFR 226.2(b)(3) provides that, unless a term is specifically defined in Regulation Z, "the words used have the meanings given to them by state law or contract." We construe undefined words used in statutes according to their plain and ordinary meanings. *Cox v Flint Bd of Hosp Managers*, 467 Mich 1, 18; 651 NW2d 356 (2002). Resort to dictionary definitions is acceptable and useful in determining ordinary meaning. *Id*. The term "bona fide" means made or done in good faith, without deception or fraud, authentic, genuine, real. *Random House Webster's College Dictionary* (1997). The purpose of TILA is to assure a meaningful disclosure of credit terms so consumers may compare various credit terms to allow them to avoid uninformed uses of credit. 15 USC 1601(a); *Inge v Rock Financial Corp*, 281 F3d 613, 619 (CA 6, 2002). With that purpose in mind, and using the ordinary definition of "bona fide," a document preparation fee is not bona fide, authentic, or genuine, if it includes charges for items other than document preparation.

There was evidence in this case to support that the document preparation charge was not "bona fide." Paul Sydloski, defendant's president, testified that he believed that the document preparation fee was charged to cover or defray defendant's expenses, specifically the costs associated "with taking a loan through the entire sequence from the application through the closing" and subsequently selling it to the secondary market or keeping it. Sydloski believed that defendant's senior management employees held the same view. He was unsure whether there was any difference between a document preparation fee and a loan processing fee. James Koessel, the bank's chief lending officer, testified that the document preparation fee was initially instituted at $ 100 to "defray some of the costs" incurred in preparing documents. Koessel admitted, however, that the document preparation fee was eventually replaced by a "loan-processing fee," which is properly disclosed as part of the finance charge. We believe the evidence presents a question of material fact with respect to whether the fee was for a variety of services necessary to take the loan from application through closing and beyond. Because a genuine issue of material fact exists with respect to whether the fee was bona fide, summary disposition on the merits of the TILA claim is inappropriate.

We note, however, that there is no question of material fact with respect to reasonableness. We agree with the *Brannam* Court that reasonableness is measured by looking at the marketplace, and we note that the market comparison approach is compatible with ordinary dictionary definitions of the term "reasonable," which include logical, not exceeding the limit prescribed by reason, not excessive, moderate. *Random House Webster's College Dictionary* (1997). The *Brannam* Court determined that $ 250 was a reasonable document preparation fee in west Michigan. *Id.* Paxson has failed to offer evidence to dispute that $ 250 is reasonable in west Michigan for document preparation. [*Cowles*, *supra* at 233-235.][17]

---

[17] While not necessary to its ruling, the trial court similarly observed:

The fee seemingly is to defray overhead and costs associated with the entire underwriting process probably the small part of which is actually preparing the documents which are disclosed on 1105 of the—of the form used at closing. Again 1105, as indicated by [plaintiff's counsel], is a title line and the document or the fees are those associated with title and title documents.

(continued…)

Nonetheless, defendant urges this Court to adopt the view apparently espoused by the United States Court of Appeals for the Seventh Circuit in *Guise v BWM Mortgage, LLC*, 377 F3d 795, 800 (CA 7, 2004). According to defendant, *Guise* sets forth an "objective" test under which a fee is bona fide as long as the services for which the fees are imposed are performed, period. We decline defendant's invitation to adopt its reading of *Guise* because it is inconsistent with the meaning of "bona fide." For example, if defendant charges $250 for its

---

(…continued)

So it seems manifest, therefore, that whatever else it is, the fee is a lot more than a document preparation fee based on the testimony of the Bank officials and based on the Koessel memorandum and the history of the fee and how it works its way into Bank West doing a business.

Does that mean that the fee is not bona fide? Well, that's the trick. It seems to me that the mere fact that documents are prepared as part of the process is not sufficient of and by itself to make the fee bona fide and bona fide, as [plaintiff's counsel] points out, under Michigan law means that it is exactly what is claimed.

It seems here that whatever else we can say about it—the fee in this case—is not exactly what it claimed. It is a document preparation fee plus an overhead and underwriting fee and a processing and application fee.

Under these circumstances, it seems to me, that standard assessment of what we're looking at leads to the inevitable conclusion that the fee is not exactly what is claimed, it is more than that and, therefore, doesn't pass muster under Michigan law as being bona fide.

To that extent, it seems to me, the plaintiffs have made out a case and established that the fee does not fulfill the requirements of the Truth-In-Lending Act because it doesn't meet the bona fide test.

37

document preparation fee, but only $10 of that total fee represents actual document preparation services and the remainder represents, for example, overhead charges, the fee would not be "bona fide" within the meaning of the TILA. In other words, the fee would not be what it is claimed to be, so the fee would not be "bona fide," authentic, or genuine. Accordingly, we reject defendant's argument and affirm the Court of Appeals decision that summary disposition under MCR 2.116(C)(10) would be inappropriate.

## IV. CONCLUSION

We hold that Cowles's initial class-action complaint tolled the period of limitations under MCR 3.501(F) for Paxson's TILA claim because Paxson's claim arose out of the same factual and legal nexus as Cowles's claim and defendant had notice of both the TILA claim and the number and generic identities of the potential plaintiffs. In light of this conclusion, we need not decide whether the amendment to the class-action complaint adding this claim related back to the date of the initial filing. Moreover, summary disposition under MCR 2.116(C)(10) would be improper because a material question of fact exists concerning whether the document preparation fee was "bona fide." Therefore, we affirm in part, vacate in part, and remand for further proceedings in the trial court consistent with this opinion.

Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Stephen J. Markman

38

S T A T E   O F   M I C H I G A N

SUPREME COURT

KRISTINE COWLES,

        Plaintiff-Appellee,

and

KAREN B. PAXSON,

        Intervening Plaintiff-Appellee,

v                                      No. 127564

BANK WEST, f/k/a BANK WEST FSB,

        Defendant-Appellant.

_____

CORRIGAN, J.  (*dissenting*).

        I dissent from the majority's conclusion that the filing of a class-action complaint tolls the period of limitations for all claims arising out of the same factual and legal nexus.  Cowles's filing of the original class action, alleging solely state law claims, did not toll the one-year period of limitations for Paxson's claim under the Truth in Lending Act.  Moreover, Paxson's claim under the act, which Cowles could not have brought, does not relate back to the filing of the original complaint.  Accordingly, I would reverse the judgment of the Court of Appeals and reinstate the trial court's grant of summary disposition to defendant.

I. FACTUAL BACKGROUND AND PROCEDURAL POSTURE

Defendant charged a $250 document preparation fee for its residential real estate mortgage transactions. In early 1997, plaintiff Kristine Cowles obtained a mortgage from defendant and was charged the $250 document preparation fee. On July 1, 1998, Cowles filed several state law claims regarding the fee on her own behalf and on behalf of a class of consumers, alleging, among other claims, that defendant's document preparation constituted the unauthorized practice of law.

On August 20, 1998, Cowles amended her complaint to allege that the fee violated the federal Truth in Lending Act (TILA)[1] because the fee was improperly designated as a fee "paid to others on your behalf" when defendant, in reality, retained the fee. The trial court granted summary disposition to defendant because the form for Cowles's transaction explicitly stated that the fee was paid to the bank. Plaintiffs have not appealed that ruling.

On February 16, 1999, Cowles filed a second amended complaint, alleging another TILA violation because defendant allegedly had failed to disclose the document preparation fee as required by 15 USC 1605(a) and Regulation Z, 12 CFR 226.4. The trial court certified the class described in Cowles's second amended complaint. Defendant then moved for summary disposition, alleging that Cowles could not serve as the class representative because her claim was time-

---

[1] 15 USC 1601 *et seq.*

2

barred.[2]  Plaintiff Karen Paxson, who had obtained a loan from defendant on February 9, 1998, and was charged the same $250 fee, then moved to intervene and serve as the class representative. Paxson's motion to intervene was granted, but the trial court later granted summary disposition to defendant on all the claims, with the exception of Paxson's TILA, claim because the period of limitations had run before Cowles had filed her initial complaint.

Defendant and Paxson filed cross-motions for summary disposition. The trial court ruled that Paxson's claim was time-barred.  It had accrued more than one year before the TILA claim was pleaded in the second amended complaint. Thus, the trial court did not relate the second amended complaint back to the filing of the initial complaint.

The Court of Appeals thereafter granted plaintiffs' application for leave to appeal and held the case in abeyance for *Dressel v Ameribank*, 468 Mich 557; 664 NW2d 151 (2003), which held that the preparation of standard mortgage forms by a bank did not amount to the unauthorized practice of law. The Court of Appeals then considered the case in light of the *Dressel* decision and dismissed the unauthorized practice of law claim.  In a published, split opinion, the Court of Appeals reversed in part.  It held that the amendment of the class action complaint

---

[2] 15 USC 1640(e) states that "[a]ny action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation."

by an intervening plaintiff related back to the initial complaint. 263 Mich App

213, 230-231; 687 NW2d 603 (2004). Judge O'Connell dissented, arguing against

the application of the relation-back doctrine. *Id.* at 236-238.

Defendant sought leave to appeal in this Court. We granted defendant's

application for leave to appeal. 474 Mich 886 (2005).

## II. CLASS ACTION TOLLING DOCTRINE

The Court of Appeals opinion addressed only whether the relation-back

doctrine applied to this case.[3] The majority opinion, however, relies solely on the

---

[3] The majority mischaracterizes the Court of Appeals majority opinion in concluding that it addressed the class-action tolling doctrine. The majority extensively cites the Court of Appeals opinion for the proposition that the Court of Appeals addressed both the class-action tolling and the relation-back doctrines. The majority, however, fails to recognize that, read in context with the remainder of the opinion, the Court of Appeals applied only the relation-back doctrine. The Court of Appeals majority stated:

> Plaintiff Paxson next challenges the trial court's grant of summary disposition to defendant on her TILA claim. *Neither the Michigan Court of Appeals nor the Michigan Supreme Court has decided whether the amendment of a class action complaint to add new theories of liability relates back to the filing of the initial complaint for purposes of computing the expiration of the period of limitations.* Thus, whether Paxson's TILA cause of action was barred by the period of limitations involves an issue of first impression and an issue of law, which is reviewed de novo. [263 Mich App at 219-220 (emphasis added).]

The Court of Appeals majority further noted that since Paxson was a member of the original class, and since the class was ultimately certified, MCR 3.501(F)(2) applied to toll the period of limitations with respect to Paxson. *Id.* at 220-221. In making this specific contention, the Court of Appeals majority, however, was not referring to Paxson's TILA claim when stating that MCR 3.501(F)(2) applied to Paxson. This is clear when read in context with the next sentence, which states, "The question then arises whether amendments to the

(continued…)

4

complaint, adding claims arising out of the conduct, transaction, or occurrence alleged in the original complaint, *relate back to the date of the initial filing when the statute of limitations was tolled.*" *Id.* at 221 (emphasis added). If the Court of Appeals had been referring to the tolling of Paxson's TILA claim when contending that MCR 3.501(F) applied to Paxson, as suggested by the majority, it would not have needed to address whether the relation-back doctrine applied.

Additionally, the Court of Appeals demonstrated that it applied the relation-back doctrine only when it stated:

> Both defendant and the trial court interpret the ruling in *American Pipe* [*& Constr Co v Utah,* 414 US 538; 94 S Ct 756; 38 L Ed 2d 713 (1974)] to require notification of specific causes of action before the period of limitations on those claims expires. *Given that the* American Pipe *Court was not addressing the relation back of amendments, we decline to interpret the language in that manner. . . .*
>
> * * *
>
> In *Crown, Cork & Seal Co v Parker,* 462 US 345; 103 S Ct 2392; 76 L Ed 2d 628 (1983), the Court revisited its ruling in *American Pipe. Again, however, the Court was not called on to address the relation back of amendments in class action litigation.* [*Id.* at 225-226 (emphasis added).]

Finally, the Court of Appeals majority clearly demonstrated that it was applying the relation-back doctrine only when it stated, "In sum, we conclude that the relation-back doctrine applies to Paxson's TILA claim and the claim was improperly dismissed on motion for summary disposition." *Id.* at 231.

To make it perfectly clear to the majority, I do not contend that the Court of Appeals did not conclude that Paxson's TILA claim was not tolled. Rather, I contend that the Court of Appeals was not referring to the tolling of Paxson's TILA claim when it stated that MCR 3.501(F)(2) applied to Paxson because she was a member of the class. *Id.* at 220-221. I further contend that the Court of Appeals held, albeit erroneously, that Paxson's TILA claim was tolled, but relied solely on the relation-back doctrine in reaching its holding. The majority has not rebutted this contention, *ante* at 13 n 6.

Evidently the majority is confused about the conclusion it reaches. It states, "[T]he Court of Appeals concluded that Paxson's claim was not time-barred

class action tolling doctrine.  This is a different issue governed by a different court rule.  The tolling of the period of limitations in class actions is governed by MCR 3.501(F)(1).  The relation back of amendments is governed by MCR 2.118(D).  The majority concludes that "[b]ecause the claim was not time-barred in this particular case, we need not decide whether the amendment to the class-action complaint . . . related back to the date of the initial filing." *Ante* at 2.

In Michigan, class actions are governed by court rule.  MCR 3.501(A) describes the nature of a class action.  It provides, in relevant part:

> (1) One or more members of a class may sue or be sued as representative parties on behalf of all members in a class action only if:
>
> (a)  the class is so numerous that joinder of all members is impracticable;

---

(…continued)
because her claim was tolled *and* the amendment related back to the initial class complaint for purposes of computing the period of limitations."  *Id.* at 16 n 6.  The majority fails to realize that its statement is merely another way of stating my contention that the Court of Appeals relied on the relation-back doctrine, not the class-action tolling doctrine, in holding that Paxson's period of limitations was tolled.  I acknowledge that the Court of Appeals holding is misleading and confusing.  If Paxson's TILA claim related back to the filing of the original complaint (which the Court of Appeals held that it did), then no need would exist to hold that the period of limitations was "tolled."  Thus, the Court of Appeals erroneously stated that Paxson's TILA claim was "tolled" because it related back to the original filing.  Rather, it should have stated that Paxson's TILA claim was not barred by the statute of limitations because it related back to the filing of the original complaint.  In reading the Court of Appeals opinion, the Court of Appeals clearly meant to state the latter, but did a poor job of communicating.

6

(b) there are questions of law or fact common to the members of the class that predominate over questions affecting only individual members;

(c) the claims or defenses of the representative parties are typical of the claims or defenses of the class[.]

MCR 3.501(F)(1) provides that "[t]he statute of limitations is tolled as to all persons within the class described in the complaint on the commencement of an action asserting a class action." While this court rule tolls the period of limitations for all persons within the class described in the complaint, it is utterly silent regarding those claims to which the tolling provision applies. The majority holds that MCR 3.501(F) only requires the "assert[ion]" of a class action to trigger the tolling of the period of limitations for all claims arising out of the same factual and legal nexus as long as the defendant has notice of the class members' claim and the number and generic identities of the potential plaintiffs. *Ante* at 24 n 10. I disagree.

MCR 3.501(F) codifies the United States Supreme Court's decision in *American Pipe & Constr Co v Utah*, 414 US 538; 94 S Ct 756; 35 L Ed 2d 713 (1974). In *American Pipe*, the Supreme Court held that "the commencement of the original class suit tolls the running of the statute for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status." *Id*. at 553.

One year later, in *Johnson v Railway Express Agency, Inc*, 421 US 454; 95 S Ct 1716; 44 L Ed 2d 295 (1975), the Supreme Court held, in a non-class context,

that a timely filing of a charge of employment discrimination with the Equal Employment Opportunity Commission under Title VII of the Civil Rights Act did not toll the limitations period for an action, based on the same facts, under 42 USC 1981. The Court stated, "[t]he tolling effect given to the timely prior filings in *American Pipe* and in *Burnett* [*v New York C R Co*, 380 US 424; 85 S Ct 1050; 13 L Ed 2d 941 (1965)] depended heavily on the fact that those filings *involved exactly the same cause of action* subsequently asserted." *Id.* at 467 (emphasis added).

In *Crown, Cork & Seal Co, Inc v Parker*, 462 US 345, 350-52; 103 S Ct 2392; 76 L Ed 2d 628 (1983), the Supreme Court extended the tolling of the period of limitations to those who bring individual actions after class certification is denied and to those who elect to opt out of the class action to file individual claims. Justice Powell concurred, cautioning, however, as follows:

> [*American Pipe*] "must not be regarded as encouragement to lawyers in a case of this kind to frame their pleadings as a class action, intentionally, to attract and save members of the purported class who have slept on their rights." The tolling rule of *American Pipe* is a generous one, inviting abuse. It preserves for class members a range of options pending a decision on class certification. The rule should not be read, however, as leaving a plaintiff free to raise different or peripheral claims following denial of class status.

> In *American Pipe* we noted that a class suit "notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who participate in the judgment. Within the period set by the statute of limitations, the defendants have the essential information necessary to determine both the subject matter and size of the prospective litigation." When thus notified, the defendant normally is not prejudiced by tolling of the statute of limitations. It is

8

important to make certain, however, that *American Pipe* is not abused by the assertion of claims that differ from those raised in the original class suit. As Justice Blackmun noted, a district court should deny intervention under Rule 24(b) to "preserve a defendant whole against prejudice arising from claims for which he has received no prior notice." [*Id.* at 354-355 (Powell, J., concurring) (citations omitted).]

In *Dressel v Ameribank*, this Court dealt with a similar issue and fact pattern as the issue and facts in this case. In *Dressel*, the plaintiffs, acting on behalf of a class of similarly situated borrowers, filed a complaint in the Kent Circuit Court alleging that Ameribank violated Michigan law by charging them an excessive document preparation fee. The plaintiffs claimed, among other things, that Ameribank violated Michigan usury law and Michigan's statutory prohibition against the unauthorized practice of law by charging a $400 document preparation fee on their November 17, 1997, loan. On March 22, 1999, the circuit court certified the plaintiffs' case as a class action. On July 2, 1999, the circuit court dismissed the case, holding that Ameribank's document preparation fee did not violate Michigan's usury law and that Ameribank did not engage in the unauthorized practice of law. The plaintiffs moved for reconsideration and sought leave to amend their complaint to include, among other things, a TILA claim. On September 3, 1999, the circuit court denied their requests. The circuit court held that the plaintiffs' TILA claim was barred by the TILA's one-year statute of limitations because the plaintiffs' complaint was filed on December 21, 1998,

more than 13 months after their November 17, 1997, loan.[4] In *Weston v Ameribank*, 265 F3d 366 (CA 6, 2001), the plaintiff obtained a loan from Ameribank on April 1, 1998. The bank charged the plaintiff a $350 document preparation fee. The *Weston* plaintiff was a member of the Dressels' class action in the *Dressel* case. On September 10, 1999, seven days after the Dressels' request for consideration and leave to amend their complaint was denied, the *Weston* plaintiff filed suit in federal district court, alleging that the $350 document preparation fee violated TILA because it was not properly disclosed. She claimed that the period of limitations on her TILA claim was tolled during the pendency of the Dressels' class action. The district court determined that the *Weston* plaintiff's claim was barred by the TILA's one-year statute of limitations. The Court of Appeals for the Sixth Circuit affirmed, holding that "the statute of limitations for putative class members of the original class is tolled only for substantive claims that were raised, or could have been raised, in the initial complaint." *Id.* at 368.

The majority contends that two separate views exist regarding the class-action tolling doctrine. It states that some courts have relied on Justice Powell's concurrence to conclude that the class-action tolling doctrine applies only to

---

[4] The circuit court in this case should have similarly denied Cowles's motion to amend her complaint to add a stale claim. As noted by Judge O'Connell, the trial court also erred in certifying the class on the basis of a stale claim. 263 Mich App at 238.

identical claims that were raised or could have been raised in the initial class-action complaint. The majority cites *Weston* in support of this proposition.

The majority further contends that other courts have held that subsequent claims filed after class certification has been denied need not be identical to the original class action for tolling to apply. See *Tosti v City of Los Angeles*, 754 F2d 1485 (CA 9, 1985); *Barnebey v EF Hutton & Co*, 715 F Supp 1512 (MD Fla, 1989). Rather, they need only share a "common factual and legal nexus to the extent that the defendant would likely rely on the same evidence or witnesses in mounting a defense." *Ante* at 19, citing *Cullen v Margiotta*, 811 F2d 698, 719 (CA 2, 1987). The majority purportedly adopts this view, but does not recognize that even a claim that shares a common factual and legal nexus with the initial claim cannot be tolled if the period of limitations had already run on the subsequent claim before the initial complaint was filed. Simply stated, there is nothing to toll. Thus, whether the tolling doctrine applies only to substantive claims that were raised or could have been raised or to all claims arising from a "common factual and legal nexus," the TILA claim in question was not, and could not have been, brought initially by class representative Cowles because the TILA's one-year period of limitations had already run before she filed her complaint. Because Paxson did not seek to intervene until after the period of limitations had also run on her TILA claim, she too could not toll the statute of limitations.

Lastly, the majority, citing Justice Powell's concurrence in *Crown, Cork & Seal,* contends that the linchpin of whether the period of limitations is tolled under

11

the class-action tolling doctrine is notice to the defendant of both the claims and the number and identities of the potential plaintiffs. It concludes that Paxson's TILA claim, which involved the same factual bases and the same evidence, memories, and witnesses, was not such a "different or peripheral claim" so that tolling is not permitted. The majority has misconstrued Justice Powell's concurrence. Justice Powell specifically noted that *American Pipe* must not be used as a tool to encourage lawyers to frame pleadings to attract purported class members who have slept on their rights. *Crown, Cork & Seal, supra* at 354 (Powell, J., concurring). He went on to state that "[t]he rule should not be read . . . as leaving a plaintiff free to raise different or peripheral claims following denial of class status." *Id*. Finally, he noted that a class action notifies the defendant of the substantive claims being brought against them and of the number and generic identities of the people participating in the judgment. *Id.* Justice Powell's comments support neither Cowles's attempt to add a different claim nor the majority's conclusion in this case. To allow Cowles to bring her TILA claim now, after sleeping on her rights, does not promote the purpose of the statute of limitations of eliminating stale claims. Nor does it notify defendant of the substantive claims being brought against it. Rather, under the majority's rule, any unnamed class member may, at any time, seek to intervene and file an amendment adding different or peripheral claims, long after the period of limitations has run on such claims, as long as the claims involve the same factual and legal nexus.

Michigan courts do not and should not allow tolling where the new claim involves different legal theories than those pleaded in the first case. See *Dressel, supra; Weston, supra*. I would follow the Sixth Circuit's rule that the tolling doctrine applies only to substantive claims that were actually raised, or could have been raised, in the initial complaint.[5] *Weston, supra* at 368. Cowles's initial complaint alleged solely state law violations. Cowles did not raise, nor could she

---

[5] The majority cites a laundry list of cases allegedly contradicting my position. *Ante* at 27-28. None of these cases, however, addresses the question at issue here, whether the filing of a class action tolls the period of limitations for a new class member's individual claim when that claim could not have been asserted by the initial class representative and when the period of limitations had already run on the new class member's claim before that member sought to intervene. As such, the cases are not inconsistent with my dissenting opinion. In any event, see *Weston,* to which to majority devotes one sentence in its entire opinion. Not only is *Weston* more factually on point than the cases cited by the majority, the legal issue is similar to that decided here, and the conclusion is consistent with my dissenting opinion.

The majority also contends that my view of the class-action tolling doctrine would frustrate the very purpose of MCR 3.501(F). I disagree. The purpose of MCR 3.501(F) is to toll the period of limitations for putative class members in regards to claims brought in the original class-action complaint. Thus, in the event that class certification is denied, the putative class members would not be punished by relying on the class action. Such a rule is necessary to prevent individual unnamed class members from having to intervene to preserve their claims. I do not dispute the validity of this rule. Rather, I would conclude that the tolling doctrine applies only to claims that were raised or could have been raised in the initial complaint. To hold otherwise would expand the purpose of MCR 3.501(F), which is to protect unnamed class members in the event that class certification is denied. Moreover, it would completely defy the general purpose of the statute of limitations, which is to prevent stale claims. Finally, the majority's interpretation of MCR 3.501(F) would allow unnamed class members to intervene at any time during the suit and to file an amendment adding different or peripheral claims long after the period of limitations has run on such claims. The majority's
(continued…)

13

have raised, the TILA claim in her initial complaint because the period of limitations had already run. Thus, Cowles's filing of the original class action, alleging solely state law claims, did not toll the one-year period of limitations for Paxson's TILA claim. Moreover, Paxson's intervention does not alter this conclusion because she did not seek to intervene until after the period of limitations had run on her TILA claim.[6] Accordingly, I would reverse the judgment of the Court of Appeals and reinstate the trial court's grant of summary disposition to defendant.

---

(…continued)
conclusion essentially deems rules of procedure in class actions, especially rules regarding statutes of limitations, unnecessary.

[6] The majority claims that I fail to explain how the filing of a class action that does not meet the requirements for class certification tolls the period of limitations, but the filing of a class action by a person who does not meet the requirements to serve as a class representative does not toll the period of limitations. The majority clearly misinterprets my dissenting opinion. I do not reach that conclusion in my dissent. Nor do I accept or reject the accuracy of the statement. Rather, I reach the narrow conclusion that Cowles did not bring her TILA claim in her original complaint and that she could not amend her complaint to add the claim because the period of limitations had run on her claim before she filed the initial complaint. Thus, MCR 3.501(F) would not apply because no claim existed to toll. Moreover, Paxson did not seek to intervene until the period of limitations had run on her TILA claim. Thus, when Paxson sought to intervene, she also had no claim to toll. MCR 3.501(F) would not apply to toll Paxson's TILA claim because the claim was not brought in the original complaint. Nor could it have been brought in the original complaint. MCR 3.501(F) does not toll claims for all class members that the class representative did not and could not bring. To allow the tolling of such claims is not only outside the purpose of MCR 3.501(F), it broadens the application of MCR 3.501(F) to every conceivable claim that shares the same factual nexus, whether pleaded or not. Moreover, it completely obliterates any concept of a statute of limitations.

14

### III. RELATION-BACK DOCTRINE

As stated above, the Court of Appeals applied only the relation-back doctrine in reaching its conclusion. The majority, however, completely fails to address whether the Court of Appeals erred in applying the relation-back doctrine to this case. MCR 2.118(D) governs the relation-back doctrine. It provides:

> An amendment that adds a claim or a defense relates back to the date of the original pleading if the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth, or attempted to be set forth, in the original pleading.

Although the court rules do not explicitly authorize the relation back of amendments in class actions, the Court of Appeals majority relied solely on this doctrine in allowing Paxson's TILA claim to survive.

The Court of Appeals majority recognized that the relation-back doctrine does not apply to the claims of nonparties and does not extend to new parties. *Hurt v Michael's Food Ctr, Inc,* 220 Mich App 169, 179; 559 NW2d 660 (1996). It concluded, however, that Paxson was not a new party because she was a member of the originally asserted class. In *Devlin v Scardelletti*, 536 US 1, 9-10; 122 S Ct 2005; 153 L Ed 2d 27 (2002), the United States Supreme Court noted:

> Nonnamed class members . . . may be parties for some purposes and not for others. The label "party" does not indicate an absolute characteristic, but rather a conclusion about the applicability of various procedural rules that may differ based on context.
>
> Nonnamed class members are, for instance, parties in the sense that the filing of an action on behalf of the class tolls a statute of limitations against them. Otherwise, all class members would be

15

forced to intervene to preserve their claims, and one of the major goals of class action litigation—to simplify litigation involving a large number of class members with similar claims—would be defeated. The rule that nonnamed class members cannot defeat complete diversity is likewise justified by the goals of class action litigation. Ease of administration of class actions would be compromised by having to consider the citizenship of all class members, many of whom may even be unknown, in determining jurisdiction. Perhaps more importantly, considering all class members for these purposes would destroy diversity in almost all class actions. Nonnamed class members are, therefore, not parties in that respect. [Citations omitted.]

As the Supreme Court observed, an unnamed class member may be considered a party for some purposes and not for others. That an unnamed class member is considered a party for tolling purposes does not automatically make him or her a party for relation-back purposes. The relation-back rule is a subsection of the rule on amendments and supplemental pleadings. As noted, only a party may amend a pleading. As an unnamed class member, Paxson could not amend any pleading. The earliest she could have amended anything was after she intervened in the suit. Therefore, her status as a party for purposes of the amendment rule did not accrue until she intervened, if at all.

Judge O'Connell, in his dissenting opinion, also concluded that unnamed class members are not parties for relation-back purposes:

> The majority opinion goes astray when it fails to acknowledge that neither the TILA claim nor the original claim of illegal practice of law ever had a legitimate basis in the law. Deciding to disregard this detail, the majority allows Paxson to litigate the stale TILA claim as though the legal fiction of class status can somehow resurrect it. Propping up its legal reasoning on the erroneously granted class status, the majority allows Paxson to emerge from anonymity, replace Cowles as class representative, and

16

advance a new cause of action that Cowles could not legitimately assert herself. The majority permits the substitution of claims and parties by glossing over Paxson's own failure to fit within the time restraints of the statute of limitations. Stretching the legal fiction of class status far beyond its rending point, the majority holds that the previously unknown Paxson, as a silent member of the ill-founded class, had actually asserted the new claim from the time of the original complaint. If the majority correctly deemed Paxson a new party, the new claim would fail for tardiness. *Hurt v Michaels' Food Center, Inc*, 220 Mich App 169, 179; 559 NW2d 660 (1996).

The majority's contrary holding has more insidious ramifications than hyper-extending the statute of limitations on one claim for one group of litigants. It permits class litigants to ignore completely statutes of limitations as long as they can continue to muster fresh "class" plaintiffs with plausible causes of action stemming from the same general circumstances alleged in the complaint. If a court finds that one claim lacks legal support, the class's attorneys may simply conjure another legal issue, amend the complaint to include it, and avoid the running of any period of limitations by relating the claim back to their original, defeated complaint. If the representative did not suffer the new harm alleged or is legally barred from asserting it, the class may simply conjure one of its imaginary participants and put him at the class's helm. This approach allows a massive suit, brimming with countless phantom plaintiffs, to rise repeatedly from its own ashes like a litigious Phoenix until a vexed and exhausted defendant finally pays it enough money to haunt someone else. [263 Mich App at 238-239.]

For the reasons well articulated in Judge O'Connell's dissent, I would conclude that unnamed class members such as Paxson should not be considered "parties" for relation-back purposes. Holding to the contrary would allow for widespread abuse of the relation-back rule, whereby intervening plaintiffs could revive stale claims, not only for themselves, but also for all similarly situated members of the class, even if the initial plaintiff never had such a claim.

17

Here, Paxson failed to bring her TILA claim within the one-year limitations period. Paxson's substitution as the class representative does not and should not give her license to add new claims that she previously failed to bring within the applicable limitations period. To so hold would defy the plain language of MCR 3.501(A)(1), which requires a class representative to bring the claims on behalf of the remaining class. Moreover, to allow the application of the relation-back doctrine would defeat the purpose of the class-action tolling doctrine. Judicial efficiency and economy, as well as the statute of limitations, dictate that the TILA claim be brought immediately, rather than years after the fact. Thus, a potential class member like Paxson, who was or should have been aware that Cowles had not pleaded a TILA claim, sleeps on her rights by failing to act immediately. To allow Paxson to now assert a TILA claim on behalf of the class would allow piggybacking of one class action onto another and, thus, tolling of the period of limitations indefinitely. Moreover, Cowles's reliance on the relation-back principle is completely inconsistent with the holding in *American Pipe*. If the relation-back principle applied in the class context to proposed interveners, the holding in *American Pipe* would be superfluous. Every intervening plaintiff seeking to pursue a new claim would simply relate his or her claim back to the initial complaint.

For these reasons, Paxson should not be permitted to intervene to pursue a new claim that was not and could not have been brought by the initial class representative. A contrary holding invites gamesmanship. Moreover, such a rule

18

will surely invite rampant abuse of the class-action tolling rule, as Justice Powell warned in *Crown, Cork & Seal, supra* at 354 (Powell, J., concurring).

## IV. CONCLUSION

Cowles's filing of the original class action, alleging solely state law claims, did not toll the one-year period of limitations for Paxson's TILA claim. Moreover, Paxson's TILA claim, which was not and could not have been brought by the initial class representative, does not relate back to the filing of the original complaint. Accordingly, I would reverse the judgment of the Court of Appeals and reinstate the trial court's grant of summary disposition to defendant. Because I would hold that Paxson's TILA claim is barred by the statute of limitations, I do not reach the issue whether a question of fact existed regarding whether the document preparation fee was "bona fide."

Maura D. Corrigan
Clifford W. Taylor
Robert P Young, Jr.