**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED JUNE 24, 2003**

PAUL DRESSEL and THERESA DRESSEL,

    Plaintiffs-Appellees,

v                                   No. 119959

AMERIBANK,

    Defendant-Appellee.

_____

BEFORE THE ENTIRE BENCH

KELLY, J.

With this case we determine whether a lender that charges a fee for the completion of standard mortgage documents engages in the unauthorized practice of law under MCL 450.681. The Court of Appeals held that the lender is so engaged and reversed a circuit court order granting summary disposition in favor of defendant. We conclude that such conduct does not constitute the practice of law and, accordingly, reverse the

Court of Appeals judgment and reinstate the circuit court order in favor of defendant.

I. FACTUAL AND PROCEDURAL BACKGROUND

In 1997, plaintiffs obtained from defendant Ameribank a real estate loan secured by a mortgage on their home. In connection with the loan, the bank prepared an adjustable rate note and a mortgage. On its settlement statement, it designated a $400 fee for "document preparation." It provided written material to plaintiffs stating that the document preparation fee was "a separate fee that some lenders charge to cover their cost of preparation of final legal papers, such as a mortgage, deed of trust, note or deed."[1]

Plaintiffs brought suit alleging that the charging of a fee for completing the mortgage documents constituted the unauthorized practice of law and violated the Michigan Consumer Protection Act (MCPA), MCL 445.901 *et seq.* In March of 1999, the case was certified as a class action to provide potential relief for other borrowers who also had been charged a document preparation fee by lending institutions.

The circuit court granted summary disposition to defendant under MCR 2.116(C)(10) and denied reconsideration. On appeal to the Court of Appeals, plaintiffs again argued

---

[1]United States Department of Housing & Urban Development, *Buying Your Home* (Washington, DC: United States Government Printing Office, 1997), p 19.

that defendant's assessment of a document preparation fee constituted the unauthorized practice of law. The Court of Appeals ruled for the plaintiffs, noting that the statutes governing the unauthorized "practice of law" do not specifically define that term and that this Court has never decided the issue. It held that the charging of a separate fee for the preparation of legal documents by an interested party constitutes the unauthorized practice of law. It held, also, that neither of the exceptions to the statutes proscribing the unauthorized practice of law[2] applied to defendant's conduct.[3]

The Court of Appeals concluded that defendant had violated the MCPA and the Savings Bank Act (SBA), MCL 487.3101 *et seq*. Because the trial court had erred in dismissing plaintiffs' claims of unauthorized practice of law, the Court reasoned, it erred also in dismissing the SBA and MCPA claims. Basic to these conclusions was the determination that, because defendant was engaged in the unauthorized practice of law, its activities were proscribed by the Credit Reform Act's prohibition on excessive fees. MCL 445.1857(3). Consequently, given that the fees were excessive under the

---

[2]MCL 450.681 and MCL 600.916.

[3]The Court of Appeals specifically held that the pro se and "as otherwise authorized by law" exceptions to the statute did not apply. 247 Mich App 133; 635 NW2d 328 (2001).

3

Credit Reform Act, they were not authorized by the SBA.  MCL 487.3430(1)(a).

Similarly, the Court of Appeals concluded that, because defendant was in violation of the SBA, plaintiffs' claims under the MCPA were also valid.  MCL 445.904(2)(d); see also *Smith v Globe Life Ins Co*, 460 Mich 446, 467; 597 NW2d 28 (1999).  Thus, the Court of Appeals reversed the order of the circuit court and remanded the case.  We granted leave to appeal.

## II. STANDARD OF REVIEW

Issues concerning the proper interpretation of statutes are questions of law that we review de novo.  *Hoste v Shanty Creek Mgt, Inc*, 459 Mich 561, 569; 592 NW2d 360 (1999).  Similarly, this Court applies a de novo standard when reviewing motions for summary disposition made under MCR 2.116(C)(10), which tests the factual support for a claim.  *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998).  We consider the facts in the light most favorable to the nonmoving party, in this case, the plaintiffs.  *Smith, supra* at 454.

## III. INTERPRETING THE UNAUTHORIZED PRACTICE OF LAW STATUTES

In Michigan, the practice of law is regulated by statute. MCL 450.681 provides, in part:

> It shall be unlawful for any corporation or voluntary association to practice or appear as an attorney-at-law for any person other than itself in

4

any court in this state or before any judicial body, or to make it a business to practice as an attorney-at-law, for any person other than itself . . . .

It is the cardinal principle of statutory construction that courts must give effect to legislative intent. *Omelenchuk v City of Warren*, 466 Mich 524, 528; 647 NW2d 493 (2002). When reviewing a statute, courts must first examine the language of the statute. If the intent of the Legislature is clearly expressed by the language, no further construction is warranted. *Helder v Sruba*, 462 Mich 92, 99; 611 NW2d 309 (2000).

In the past, this Court concluded that it is impossible to formulate a specific and enduring definition of the practice of law "'for the reason that under our system of jurisprudence such practice must necessarily change with the everchanging business and social order.'" *State Bar of Michigan v Cramer*, 399 Mich 116, 133; 249 NW2d 1 (1976), quoting *Grand Rapids Bar Ass'n v Denkema*, 290 Mich 56, 64; 287 NW 377 (1939). We disagree with that conclusion.

Although formidable, the task of formulating a definition of the practice of law is not impossible. The full meaning of the language in MCL 450.681, and in its sister provisions,[4] prohibiting the unauthorized "practice of law" and engagement

---

[4]MCL 600.916 prohibits individuals, as opposed to corporations, from engaging in the unauthorized practice of law or the law business.

in the "law business" may not be immediately apparent. However, the language is capable of being construed. In order to accomplish that, we review the purposes of the unauthorized practice of law statutes.

These purposes are discernable from the regulations governing the legal profession that preceded and coincided with the enactment of the statutes. From them, it is possible to extrapolate a sufficiently accurate definition of the "practice of law" to guide parties in their dealings with each other.

### A. THE PURPOSE OF THE UNAUTHORIZED PRACTICE OF LAW STATUTES

Regulation of the legal profession began early in the English legal tradition. See, generally, 1 Pollock & Maitland, *History of English Law* (Boston: Little, Brown, & Co, 2d ed, 1899), pp 211-217; Baker, *An Introduction to English Legal History* (London: Butterworths, 3d ed, 1990), pp 21, 179. In our nation, also, regulation of the practice of law has been an innate characteristic of the legal tradition. See Pound, *The Lawyer from Antiquity to Modern Times* (St Paul: West, 1953), pp 130, 135-136; see, e.g., 2 *Works of John Adams* (Boston: Little & Brown, 1850), pp 45-50.

In the period between the American Revolution and the Civil War, however, regulation of the profession receded.[5] By

---

[5]See, e.g., Ind Const 1851, art VII, § 21 ("Every person
(continued...)

6

the turn of the last century, increasing concern had developed that the spread of unlicenced practitioners was harmful to the profession and dangerous to the public. See Comment, *Unauthorized practice of law—The full service bank that was: Bank cashier enjoined from preparing real estate mortgages to secure bank loans*, 61 Ky L J 300, 303-304 (1972).

Thus, at the time our unauthorized practice of law statutes were enacted, there was a trend toward restoring the organized bar as a means of regulating the practice of law. At the core of this movement and of all other attempts to regulate the practice was an interest in protecting the public from the danger of unskilled persons practicing law. See Comment, *supra* at 301-302, 304. It became the basic purpose for our unauthorized practice statutes. As we stated in *Cramer*, "'Laymen are excluded from law practice . . . solely to protect the public.' . . . It is this purpose of public protection which must dictate the construction we put on the term 'unauthorized practice of law'." *Id.,* at 134, quoting *Oregon State Bar v Security Escrows, Inc*, 233 Or 80, 87; 377 P2d 334 (1962).

Having discerned the purpose of the statutes, we now explore the extent of their reach. In this regard, we find

---

[5](...continued)
of good moral character, being a voter, shall be entitled to admission to practice law in all courts of justice.")

persuasive the analysis of the trial judge in this case, Judge

Dennis Kolenda.

### B. Conduct Proscribed by the Statutes

Judge Kolenda noted:

> Some activities are plainly the practice of law. "'It is too obvious for discussion'" that "'the conduct of cases in courts'" is the practice of law, as is "'the preparation of pleadings and other papers incident to actions . . . and the management of such actions and proceedings on behalf of clients before judges and courts . . . [.]" *Detroit Bar Assn v Union Guardian Trust Co*, 282 Mich 216, 222[ 276 NW 365] (1937), quoting *In re Duncan*, 83 SC 186; 65 SE 210 (1909); and *Denkema*, [*supra*] at 63. Doing those things, at least doing them well, demands the unique training and skills of an attorney. It is likewise obvious that, for the same reason, the practice of law includes "the giving of legal advice in any action taken for others in any matter connected with the law," [*id.*] at 63, even though unrelated to any action in court. Much of what lawyers do is "'performed outside of any court and [has] no immediate relation to proceedings in court,'" [*id.*] at 64, quoting *Opinion of the Justices*, 289 Mass 607, 613; 194 NE 313 (1934), and giving competent legal advice requires a lawyer's training and skill.
>
> More problematic is the drafting of documents. In *Denkema*, *supra* [at 63], our Supreme Court said that the practice of law includes "the preparation of all legal instruments of all kinds whereby a legal right is secured," and in *Detroit Bar Assn*, [*supra*] at 221, that Court quoted holdings from other courts which included within the practice of law "'the drafting of legal documents of all kinds. [ . . .]'" Very significantly, however, the Court prefaced those quotations with the reservation, "[w]ithout giving full sanction thereto," *Id.*, and a careful reading of those and subsequent cases discloses that such a broad definition has never actually been applied in this State. Only some documents, e.g., wills, have actually been held to constitute the practice of law, [*Denkema, supra*] at

8

65.    When composing a document requires "the determination of the legal effect of special facts and conditions," that activity is the practice of law, [*Ingham Co Bar Ass'n v Walter Neller Co*, 342 Mich 214, 228; 69 NW2d 713 (1955)(citations omitted).]    "[P]rofound legal knowledge [is] necessary" to properly draft such documents. *Detroit Bar Assn*, [*supra*] at 223 (citations omitted).

The practice of law does not, on the other hand, encompass drafting "the ordinary run of agreements [used] in the every day activities of the commercial and industrial world," *Detroit Bar Assn*, [*supra*] at 229. Legal training and knowledge are not necessary to properly compose them. Drafting simple documents, which drafting does not entail giving advice or counsel as to their legal effect and validity, is not the practice of law. *Denkema,* [*supra*] at 66.    Specifically, the preparation of ordinary leases, mortgages and deeds do not involve the practice of law, [*Walter Neller Co*, 342 Mich 226-227.]    They have become "'so standardized that to complete them for usual transactions requires only ordinary intelligence rather than legal training.'" *Id.* at 224, quoting *Hulse v Criger*, 363 Mo 26, 44; 247 [SW2d] 855 (1952).    To insist that only a lawyer can draft such documents would impede numerous commercial transactions without protecting the public, [*id.*] at 229, i.e., would not further the purpose of restricting the practice of law to trained and licensed attorneys. *Cramer*, [*supra*] at 133.

Hence, our courts have consistently rejected the assertion that the Legislature thought that a person practiced law when simply drafting a document that affected legal rights and responsibilities. *Walter Neller*, 342 Mich 228-229; *Cramer*, 399 Mich 133. Instead, our courts have found a violation of the unauthorized practice of law statutes when a person counseled another in matters that required the use of legal knowledge and discretion. We agree and reiterate that

9

a person[6] engages in the practice of law when he counsels or assists another in matters that require the use of legal discretion and profound legal knowledge.

This definition is in accord with the purpose of the statutes, the protection of the public. It maintains the integrity of the legal profession without overburdening our normal economic activities with unnecessary restrictions. Also, it provides parties with a common-sense approach to conforming their conduct so as to avoid committing the unauthorized practice of law.[7]

## IV. APPLICATION OF THE STATUTES

Plaintiffs contend that defendant's activities constituted the unauthorized practice of law because they affected plaintiffs' legal rights and responsibilities. Plaintiffs also contend that defendant's decision to charge a

---

[6]As used in this opinion, "person" refers to any legal entity.

[7]A report by the American Bar Association's Task Force on the Model Definition of the Practice of Law supports our conclusion that this definition comports with the general purpose for regulating the practice of law. The Task Force reviewed the regulation of the practice of law among the several states and ultimately recommended "that every jurisdiction adopt a definition of the practice of law . . . [that] include[s] the basic premise that the practice of law is the application of legal principles and judgment to the circumstances or objectives of another person or entity." See Report of the American Bar Association Task Force on the Model Definition of the Practice of Law to the House of Delegates, http://www.abanet.org/cpr/model-def/taskforce_rpt_429.pdf. June 11,2003.

fee for its services compels a holding that it engaged in the practice of law and the "law business."

As we noted previously, the preparation of ordinary mortgages is not the practice of law. Plaintiffs do not assert that the bank's preparation of their mortgage document was in conjunction with anything other than an ordinary transaction in the normal course of the bank's business. The bank's employees did not draft the mortgage document. They merely completed a standard form document that the federal government compiled and that is readily available to the public.

In performing the act of completing the standard form mortgage, defendant was acting as an amanuensis, a kind of secretary for plaintiffs. No legal knowledge or discretion was involved in the document's completion. The bank did not counsel plaintiffs with regard to the legal validity of the document or the prudence of entering into the transaction. In general, the completion of standard legal forms that are available to the public does not constitute the practice of law. *State Bar of Michigan v Kupris*, 366 Mich 688, 694; 116 NW2d 341 (1962); see also *Denkema*, 290 Mich 68; *Walter Neller*, 324 Mich 222. Accordingly, defendant was not practicing law when it completed the mortgage form at issue in this case.

Moreover, because defendant was not practicing law when it completed the mortgage, it was not engaged in the "law

11

business."  It is immaterial that it charged a fee for its services.  Charging a fee for nonlegal services does not transmogrify those services into the practice of law.[8]

CONCLUSION

We hold that a person engages in the practice of law when he counsels or assists another in matters that require the use of legal discretion and profound legal knowledge.  Defendant completed standard mortgage forms for plaintiffs and charged a fee for the service.  But it did not counsel or assist plaintiffs in matters requiring legal discretion or profound legal knowledge.  Therefore, it did not engage in the practice

---

[8]Plaintiffs' reliance on *Walter Neller* and *Kupris* for the proposition that charging a fee for a law-related service constitutes the practice of law is misplaced.

In *Walter Neller*, we remarked that a realtor who charged a separate fee for a real estate closing might be engaged in the practice of law.  However, the holding in the case was that the defendant was not practicing law by completing and executing form documents that were incidental to his business.

In *Kupris*, the defendant real estate broker was enjoined from advising another broker and that broker's clients in the preparation of a chattel mortgage.  The fact that the defendant had charged a fee for the service does not bind that case to this.  Rather, what distinguishes *Kupris* from both *Walter Neller* and this case is that there the defendant took upon himself the role of advising others about the legal effect of a document.  *Kupris,* 366 Mich 692-693.

Because the discussions about charging a fee were not necessary to the resolution of either case, they are obiter dicta.  Thus, neither discussion constitutes a holding to which the binding principle of stare decisis is applied. *People v Bouchard-Ruhland*, 460 Mich 278, 286 n 4; 597 NW2d 1 (1999), citing *Roberts v Auto-Owners Ins Co*, 422 Mich 594, 596; 374 NW2d 905 (1985).

12

of law and did not violate MCL 450.681. Accordingly, we reverse the Court of Appeals decision and reinstate the circuit court order granting summary disposition in favor of defendant.

Marilyn Kelly
Maura D. Corrigan
Michael F. Cavanagh
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

13

**S T A T E   O F   M I C H I G A N**

**SUPREME COURT**


PAUL DRESSEL and THERESA DRESSEL,

    Plaintiffs-Appellees,

v                                                                          No. 119959

AMERIBANK,

    Defendant-Appellee.

_____

WEAVER, J. (*concurring*).

I concur with the majority that the filling out of standardized mortgage documents does not constitute the practice of law.

I disagree, however, with the reasoning employed by the majority in reaching this conclusion. Specifically, I seriously question the majority's attempt to formulate a comprehensive definition of the "practice of law." Such a definition runs contrary to prior precedent and appears to contribute little clarity or guidance to the unauthorized-practice-of-law analysis.

This Court has long held that the "practice of law" defies precise definition. "'Even if possible, it is not practical or advisable to attempt specific definition of

"practice of law."'" *Detroit Bar Ass'n v Union Guardian Trust Co*, 282 Mich 216, 220; 276 NW 365 (1937) (citation omitted). This reluctance to adopt an inclusive definition of the "practice of law" derives from the fact that "under our system of jurisprudence such practice must necessarily change with the everchanging business and social order." *Grand Rapids Bar Ass'n v Denkema*, 290 Mich 56, 64; 287 NW 377 (1939); see also *Ingham Co Bar Ass'n v Walter Neller Co*, 342 Mich 214; 69 NW2d 713 (1955); *State Bar of Michigan v Kupris*, 366 Mich 688; 116 NW2d 341 (1962); *State Bar of Michigan v Cramer*, 399 Mich 116; 249 NW2d 1 (1976). Constant new developments in society, technology, business, and the law preclude any chance of arriving at a lasting definition.[1]

Today, the majority deviates from this longstanding restraint and defines the "practice of law" as "counsel[ing] or assist[ing] another in matters that require the use of legal discretion or profound legal knowledge." *Ante* at 12-13.

_____

[1] The view that the "practice of law" does not admit of exact definition is shared by many other jurisdictions. *Arkansas Bar Ass'n v Block*, 230 Ark 430; 323 SW2d 912 (1959); *State of Florida v Sperry*, 140 So 2d 587 (Fla, 1962); *Fought & Co, Inc v Steel Engineering and Erection, Inc*, 87 Hawaii 37; 951 P2d 487 (1998); *Iowa Supreme Court Comm on Unauthorized Practice of Law v Sturgeon*, 635 NW2d 679 (Iowa, 2001); *Bd of Overseers of the Bar v Mangan*, 2001 ME 7; 763 A2d 1189 (2001); *Cardinal v Merrill Lynch Realty/Burnet, Inc*, 433 NW2d 864 (Minn, 1988); *State of Nebraska v Childe,* 147 Neb 527; 23 NW2d 720 (1946); *Appeal of Campaign for Ratepayer's Rights,* 137 NH 720; 634 A2d 1345 (1993); *State of North Dakota v Niska,* 380 NW2d 646 (ND, 1986).

To reach this new standard, the majority analyzes the purpose of the statute—the protection of the public from untrained legal practitioners—and extrapolates a definition meant to effectuate that purpose. *Ante* at 6-7.[2]

However, I do not believe that the majority's definition (or, for that matter, *any* definition) will better protect the public than the statute currently does. Whether certain conduct requires the use of "legal discretion or profound legal knowledge" is as open-ended an inquiry as whether that same conduct constitutes the "practice of law." "Legal discretion" and "profound legal knowledge" are amorphous concepts that, like the "practice of law," do not lend themselves to a single interpretation. Thus, even with the majority's definition, a lack of consensus will persist among the courts. Moreover, any attempt to conclusively define the term necessarily runs the risk of sweeping too broadly—thereby impeding public access to certain quasi-legal services at more competitive prices—or cutting too narrowly—thereby permitting nonlawyers to engage in legal activities to the detriment of the public. See United States Department of Justice and Federal Trade Commission December 20, 2002, joint letter recommending that the "practice of law" not be defined.

---

[2] The majority does not explain what has changed that allows it to define today what it was incapable of defining in the past.

http://www.ftc.gov/opa/2002/12/lettertoaba.htm.

The prudent and restrained course therefore seems to be to remain committed to our prior holdings and continue deciding these issues on a case-by-case basis. Since no definition of the "practice of law" can fully account for the infinite variety of fact situations that will inevitably arise, it is best to decide these cases in light of their specific circumstances. This approach allows the lower courts to explore the concept's dimensions without confining their analyses to the parameters of an artificial formula.

Judge Kolenda's exemplary opinion demonstrates the wisdom of this approach. In his opinion, Judge Kolenda traced the relevant case law, examined it in light of the facts of the case, and properly concluded that filling out standardized mortgage documents does not constitute the practice of law. I support and adopt both his case-specific method of analysis and his conclusion.

Elizabeth A. Weaver

4