# STATE OF MICHIGAN

# COURT OF APPEALS

JIMMIE TURNER,

        Plaintiff-Appellant,

v

THE BOARD OF HOSPITAL MANAGERS OF
HURLEY MEDICAL CENTER and/or HURLEY
HOSPITAL and/or HURLEY MEDICAL
CENTER and STEVE SITAR,

        Defendants-Appellees.

UNPUBLISHED
June 27, 2017

No. 331387
Genesee Circuit Court
LC No. 15-104342-CZ

Before: JANSEN, P.J., and MURPHY and BORRELLO, JJ.

PER CURIAM.

Plaintiff appeals as of right a December 11, 2015, trial court order granting summary disposition in favor of defendants in this wrongful termination action involving the Whistleblower Protection Act (WPA), MCL 15.361 *et seq*. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

Defendant Hurley Medical Center (Hurley) terminated plaintiff's employment as a public safety officer after 15 years of service with the hospital. At the time, defendant Steve Sitar was plaintiff's immediate supervisor. Plaintiff's termination arose out of an incident that occurred in the morning hours of November 15, 2014, where plaintiff was stationed at a security post in front of the hospital's emergency entrance. A man, later identified as Archie McClain, walked up to the security post and attempted to enter through the metal detector. Plaintiff immediately suspected that McClain was intoxicated because "he was stumbling all into it." Plaintiff and his partner, officer Henry Hills, allowed McClain into the hospital because he said he was going to the emergency room. However, a nurse quickly informed plaintiff that McClain was attempting to go to another floor. Plaintiff then escorted McClain out of the building. A surveillance video showed plaintiff as he escorted McClain across the emergency drive. About halfway across, McClain turned and held his arms out as if ready to fight. The two men bumped their chests against each other until plaintiff pushed McClain to the ground. Plaintiff walked back to his station and called the on-site police officer. McClain was arrested, and approximately nine days later, he returned to the hospital and filed a complaint, alleging he was assaulted.

-1-

Plaintiff was suspended pending an investigation, and on January 19, 2015, he was terminated. The termination notice provided:

> Your suspension on 1-09-2015 for violating Hurley Medical Policy #0387 Safe Workplace (**Violent Act** – Any physical or verbal act or communication (including written, pictorial or electronic) reasonably perceived to intend to inflict or threaten to inflict physical or psychological harm or suffering on another person) has been converted to an immediate termination as of January 19th, 2015 [sic] due to the seriousness of your intentional act and disregard to the safety of a person on Hurley Medical Center Property while on duty.
>
> Physical abuse and disregard to an individuals [sic] safety cannot and will not be tolerated by the Medical Center. In addition to violating Policy #0387, you also committed a flagrant violation of Policy # 0022 Courtesy (It is the policy of Hurley Medical Center to treat every customer with overt courtesy. Customers of the Medical Center include physicians, patients and their families, visitors, guests and other employees).

Labor relations officer Barry Fagan signed the termination notice. After reviewing public safety supervisor Jeffrey Woodard's report and the surveillance video, Fagan informed Sitar that plaintiff should be "separated" from Hurley. Fagan explained at his deposition that termination was appropriate because plaintiff abused a client, visitor, or possible patient. The abuse came in the form of "[s]hoving the man to the ground and leaving him in the roadway." Fagan's interpretation of the video was that plaintiff grabbed McClain by the shirt, pulled him close, and then pushed him down to the ground. Fagan further explained that his only reason for firing plaintiff, as stated in the termination notice, was "for a violent or physical act against another person."

Sitar testified at his deposition that plaintiff was terminated due to a violation of the Safe Workplace Policy. The reason why plaintiff was not suspended until January 6, 2015, was because McClain could not make a complaint until he was released from jail, and plaintiff had gone on a month-long vacation. While watching the surveillance video at his deposition, Sitar admitted that plaintiff had not violated any use of force policy when he grabbed McClain's arm and guided him outside to the drive in front of the emergency room. However, Sitar explained that at one point plaintiff grabbed McClain, pulled him in, and then pushed him down. Sitar said that at no time did McClain charge towards plaintiff. It was also Sitar's belief that plaintiff started "verbally berating" McClain. However, when asked if he knew what plaintiff was saying, Sitar admitted that there was no sound on the video—though his gestures and the movement of plaintiff's mouth made it look "like a berating." Sitar stated that plaintiff should have called a police officer immediately after McClain started back talking plaintiff in the hospital. Because of plaintiff's actions, Sitar recommended that plaintiff be terminated, but Sitar said that he had "nothing to do with" the actual termination notice. The termination was addressed by labor relations. Sitar stated that plaintiff "wasn't fired because he contacted the police officer. He was fired because he didn't contact the police officer when he should have."

On February 28, 2015, plaintiff filed his complaint alleging that defendants wrongfully terminated his employment in violation of the WPA for reporting the trespassing incident to

Hurley staff and the Flint Police Department, for how plaintiff handled subsequent requests from Hurley employees and the Flint Police Department, and for how plaintiff "participated" in the incident. Therefore, plaintiff alleged, "[d]efendants discharged and/or discriminated and/or retaliated against [plaintiff] because he engaged in 'protected activity.'"[1]

On November 12, 2015, defendants moved for summary disposition, asserting that plaintiff's claim under the WPA failed. Defendants explained that plaintiff's WPA claim rested on the assertion that he was discharged from his employment for reporting McClain to a police officer, which was a protected activity under the WPA. Because plaintiff did not have direct evidence that he was fired for reporting the trespasser to the police, defendants indicated that the trial court was required to use the burden-shifting framework set forth in *McDonnell Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973), and applied by our Supreme Court in *Debano-Griffin v Lake County*, 493 Mich 167; 828 NW2d 634 (2013). Defendants argued that plaintiff could not establish a prima facie case of retaliation under the WPA, i.e., that (1) plaintiff engaged in a protected activity; (2) he was discharged from his employment, and (3) there was a causal connection between the protected activity and the discharge.

Defendants, assuming that the first two elements had been met, argued that the alleged protected activity under the WPA—reporting a trespasser to a police officer—was not the cause underlying plaintiff's discharge. Instead, plaintiff was discharged for a number of violations under Hurley's policies, including its use of force policy. Additionally, defendants claimed that even if plaintiff could prove a prima facie case, they were entitled to summary disposition nonetheless because plaintiff's assaultive conduct towards another person while on duty was a legitimate reason for the discharge that was unrelated to the protected activity.

Following a hearing, the trial court entered an order granting defendants' motion for summary disposition on December 14, 2015. In its written opinion, the trial court stated:

> no reasonable jury could find that [p]laintiff's act of calling the police to report a trespasser was a motivating factor in [d]efendants' decision to fire him. Defendants fired [p]laintiff after conducting an investigation into allegations of excessive force regarding the trespasser. Defendants determined that [p]laintiff used excessive force and violated several Hurley policies with regard to the incident.

The trial court noted that it considered only whether there was "evidence from which a reasonable jury could find that [p]laintiff's act of calling the police was a motivating factor in his termination." The trial court determined that even though defendants based the termination, in part, on plaintiff's failure to call the police before the situation escalated, there was no evidence that proved plaintiff was actually terminated for calling the police to report the trespasser. The trial court therefore denied plaintiff's motion for reconsideration. This appeal ensued.

---

[1] Plaintiff also alleged that his termination violated public policy; however, that claim is not at issue in this appeal.

-3-

## II. ANALYSIS

On appeal, plaintiff argues that the trial court relied on the outdated "pretext plus" standard, rather than the "permissive pretext" standard, to grant summary disposition in favor of defendants. Therefore, plaintiff argues, had the trial court implemented the proper standard, his claim would have survived summary disposition.

We review de novo a trial court's granting of a defendant's motion for summary disposition under MCR 2.116(C)(10). *Dressel v Ameribank*, 468 Mich 557, 561; 664 NW2d 151 (2003). We consider the affidavits, pleadings, depositions, admissions, and other documentary evidence in the light most favorable to the nonmoving party. *Liparoto Constr, Inc v Gen Shale Brick, Inc*, 284 Mich App 25, 29; 772 NW2d 801 (2009). Summary disposition is appropriate under MCR 2.116(C)(10) when there is a genuine issue with respect to any material fact and the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999).

"The WPA provides a remedy for an employee who suffers retaliation for reporting or planning to report a suspected violation of a law, regulation, or rule to a public body." *Anzaldua v Neogen Corp*, 292 Mich App 626, 630; 808 NW2d 804 (2011). To establish a prima facie case under the WPA, a plaintiff must show that "(1) the plaintiff was engaged in protected activity as defined by the act, (2) the defendant took an adverse employment action against the plaintiff, and (3) 'a causal connection exists between the protected activity' and the adverse employment action." *Debano-Griffin*, 493 Mich at 175 (quotations omitted). As it pertains to the element of causation, "[a]bsent direct evidence of retaliation, a plaintiff must rely on indirect evidence of his or her employer's unlawful motivations to show that a causal link exists between the whistleblowing act and the employer's adverse employment action." *Id.* at 176.

When a plaintiff relies on circumstantial as opposed to direct evidence of an employer's retaliatory motive, the claim is examined under the *McDonnell Douglas* burden-shifting framework. *Debano-Griffin*, 493 Mich at 175-176. Under the *McDonnell Douglas* framework, if a plaintiff establishes a prima facie case of retaliation, the burden then shifts to the employer to proffer a legitimate, nonretaliatory reason for the adverse employment action. *Debano-Griffin*, 493 Mich at 175-176. "If the defendant produces a legitimate, nondiscriminatory reason for its action, the plaintiff must demonstrate that the evidence in the case, when construed in the plaintiff's favor, is sufficient to permit a reasonable trier of fact to conclude that [retaliation] was a motivating factor for the adverse action[.]" *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 277; 826 NW2d 519 (2012). "A plaintiff can establish that the employer's proffered reasons for the adverse employment action qualify as pretextual by demonstrating that the reasons (1) had no basis in fact, (2) were not the actual factors motivating the decision, or (3) were insufficient to justify the decision." *Id*.

On appeal, plaintiff argues that the trial court applied the wrong pretext standard. However, plaintiff's argument as to the issue of pretext is irrelevant unless plaintiff first establishes a prima facie case of retaliation. In this case, the trial court held that plaintiff failed to prove a prima facie case of retaliation. As a result of the trial court's ruling, there was no need under the trial court's analysis to determine whether defendants' proffered legitimate reason for

-4-

terminating plaintiff was pretextual. Therefore, we begin our analysis by examining whether the trial court erred by holding that plaintiff failed to set forth a prima facie case of retaliation.

Defendant does not dispute that plaintiff was engaged in a protected activity when he called police on the night of the incident or that the termination was an adverse employment action; thus, whether plaintiff established a prima facie case of retaliation turns on the element of causation—i.e. whether plaintiff's protected activity of notifying police was causally connected to his termination. *Debano-Griffin*, 493 Mich at 175.

Plaintiff argues that defendants began their investigation nine days after he engaged in a protected activity, i.e., calling the police to report a trespasser on the premises, and this short length of time shows a causal connection. However, "a temporal relationship, standing alone, does not demonstrate a causal connection between the protected activity and any adverse employment action." *Id*. at 177 (quotation marks omitted). Instead, "[s]omething more than a temporal connection between protected conduct and an adverse employment action is required to show causation when retaliation is claimed." *Id*. (quotation marks omitted). Here, other than temporal proximity, this Court cannot find from this recordevidence of a causal connection between the protected activity and plaintiff's termination. To the contrary, plaintiff admitted that his supervisor and the police officers initially commended plaintiff for calling the police. In fact, plaintiff admitted that, on average, he would call the police four to five times a day when confronting trespassers. Furthermore, defendants took no action against plaintiff until McClain came forward over a week later with allegations that plaintiff assaulted him, which supported defendants' assertion that the motive for terminating plaintiff was based on the assault and not the act of notifying police. Moreover, plaintiff was not terminated until defendants reviewed the surveillance video, completed the investigation, and determined whether plaintiff actually violated Hurley's use of force policy. Hence, in the absence of any evidence to suggest that the close temporal proximity between plaintiff calling the police and his termination had to do with anything other than the use of excessive force against McClain, we find that plaintiff's reliance on this assertion unsubstantiated and therefore unconvincing Simply stated, where there was no evidence to support a reasonable inference that plaintiff's act of notifying police was causally connected to defendants' decision to terminate plaintiff, plaintiff did not establish a prima facie case of retaliation under the WPA.*Id*. Because plaintiff failed to establish a prima facie case under the WPA, we need not determine whether a rational trier of fact could conclude that defendants' proffered legitimate reason for terminating plaintiff's employment was instead a pretext for unlawful retaliation. *Id*. at 176.

Plaintiff also argues on appeal that there was direct evidence of retaliation. "Where direct evidence is offered to prove discrimination, a plaintiff is not required to establish a prima facie case within the *McDonnell Douglas* framework, and the case should proceed as an ordinary civil matter." *DeBrow v Century 21, Great Lakes, Inc*, 463 Mich 534, 539-540; 620 NW2d 836 (2001). It is only when a plaintiff cannot show direct evidence of a causal connection between his protected activity and his employer's act of discharging him that indirect evidence is needed to infer unlawful retaliation. *Debano-Griffin*, 493 Mich at 176.

Plaintiff argues that Sitar's deposition testimony amounted to direct evidence of retaliation. Specifically, plaintiff argues that Sitar's testimony shows that plaintiff was fired because he called the police. From the record evidence presented we cannot find an inference

that would support plaintiff's assertion. The record reveals that Sitar testified that defendant should have immediately notified the police of McClain's trespass. This evidence does not lead to an inference that plaintiff's discharge was premised on his calling the police. Rather, the testimony leads to the inference stated by Sitar, specifically that plaintiff "wasn't fired because he contacted the police officer. He was fired because he didn't contact the police officer when he should have." A failure to call the police in a timely manner cannot reasonably be considered direct evidence that defendants terminated plaintiff for calling the police. Accordingly, there was no direct evidence of retaliation and the trial court did not err in granting defendants' motion for summary disposition.

Affirmed. No costs awarded. MCR 7.219(A).


/s/ Kathleen Jansen
/s/ William B. Murphy
/s/ Stephen L. Borrello