*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MELVINA HOWARD,

        Plaintiff-Appellee,

and

SELECT SPECIALIST LLC, AFFILIATED
DIAGNOSTIC OF OAKLAND LLC, FERNDALE
REHABILITATION CENTER, CLEARPATH
DIAGNOSTICS LLC, DYNAMIC MEDICAL
SUPPLY LLC, UNITED LAB, and GROESBECK
RX LLC,

        Intervening Plaintiffs-Appellees,

v

LM GENERAL INSURANCE COMPANY,

        Defendant-Appellant,

and

BENJAMIN DANIEL GOSS and SUSAN KAY
SUTTON,

        Defendants.

FOR PUBLICATION
January 12, 2023
9:10 a.m.

No. 357110
Oakland Circuit Court
LC No. 2019-177832-NI

Before: SHAPIRO, P.J., and RICK and GARRETT, JJ.

PER CURIAM.

In this first-party action seeking recovery of personal protection insurance (PIP) benefits and underinsured motorist benefits (UIM) benefits, defendant LM General Insurance Company ("LM") appeals by leave granted the trial court's order denying its motion for summary disposition. For the reasons stated in this opinion, we affirm.

-1-

## I. BACKGROUND

On May 7, 2019, plaintiff Melvina Howard was injured in a car accident while driving her 2008 Mercury Mariner. The Mariner was covered under an LM automobile insurance policy that listed Howard and Jasmine Bartell as named insureds. The policy was originally issued in 2014 regarding two other vehicles and the Mariner was added to the policy on February 2, 2019. There are no allegations of fraud regarding the purchase of the policy in 2014, the renewals of that policy or the addition of the Mariner to the policy.

A few weeks before the accident, on April 19, 2019, Bartell contacted LM and added a 2008 GMC Yukon to the LM policy. According to LM, Bartell told the company's representative that she owned the Yukon and that it was garaged at her home. After the accident, LM discovered that the Yukon was actually owned by Bartell's relative and that it was garaged at the relative's home in Detroit, facts that would have led to a denial of coverage or a greatly increased premium on the Yukon.[1] On October 19, 2019, LM sent a letter addressed to both Bartell and plaintiff stating that in light of Bartell's misrepresentation regarding the Yukon, the entire policy, including coverage on the Mariner, was rescinded retroactive to April 19, 2019 (the date the Yukon was added to the policy), and so plaintiff would not receive the PIP or UIM benefits for which she had applied because her accident occurred after that date.

In light of LM's decision to deny benefits and rescind the policy, plaintiff filed suit. LM has not proffered any evidence that plaintiff was complicit in the misrepresentation regarding the Yukon. Nevertheless, it moved for summary disposition on the ground that Bartell's fraud concerning the Yukon properly resulted in rescission of the entire policy as to all insureds. Plaintiff opposed the motion, arguing that her coverage under the policy should not be rescinded because she did not make any misrepresentations to LM and she had not been driving the Yukon at the time of the accident. The trial court agreed, adopted plaintiff's arguments, and denied LM's motion for summary disposition and motion for reconsideration. We granted LM's interlocutory appeal.[2]

---

[1] LM presented an affidavit from a "senior compliance analyst" stating that had Bartell provided accurate information regarding the Yukon, it would not have insured the vehicle or at minimum have done so only for a far greater premium.

[2] We review de novo a trial court's decision on a motion for summary disposition. *Dressel v Ameribank*, 468 Mich 557, 561; 664 NW2d 151 (2003). Under MCR 2.116(C)(10), the party moving for summary disposition is entitled to judgment as a matter of law when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact." "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). We also review de novo the interpretation of a contract, such as an insurance policy. *Webb v Progressive Marathon Ins Co*, 335 Mich App 503, 507; 967 NW2d 841 (2021).

## II. ANALYSIS

This case presents the question whether rescission of a policy as to PIP coverage should be granted to a no-fault insurer when there is more than one named insured and the injured insured did not participate in the fraud. As to PIP coverage, which is governed by common-law equitable principles, the lack of proof that plaintiff was involved in the fraud must weigh heavily in her favor even though she is a coinsured. We further conclude that the absence of any evidence that misrepresentations were made as to the Mariner also weighs in plaintiff's favor.[3] Given those factors and the other "nonexclusive list of factors" set forth in Justice MARKMAN's concurrence in *Farm Bureau Gen Ins Co of Mich v ACE American Ins Co*, 503 Mich 903 (2018), we conclude that LM has not demonstrated that a balance of the equities weighs in its favor. Accordingly, we affirm the trial court's decision in this respect.[4]

As to UIM coverage, we conclude that under the language of LM's policy it could rescind coverage as to all insureds based on a material misrepresentation by only one of them. However, we further conclude that the misrepresentation regarding the addition of the Yukon was not material since the accident occurred in a second covered vehicle as to which no fraud is alleged.

### A. PIP

Plaintiff seeks both PIP and UIM benefits. The availability of rescission of coverage for material misrepresentations as to (optional) UIM coverage is governed by the policy.[5] However, the source of the right to rescind (mandatory) PIP coverage must flow from the no-fault act or the common law, not the policy terms. See *Meemic Ins Co v Fortson*, 506 Mich 287, 293; 954 NW2d 115 (2020).

By statute, a no-fault insurance contract may not "limit mandatory coverage to a greater extent than either the statute or the common law." *Id*. at 302. Rather, "a provision in an insurance policy purporting to set forth defenses to mandatory coverage is only valid and enforceable to the

---

[3] LM asserts on appeal that the Mariner was registered to a different address than the address on the policy, but LM presents no evidence supporting this allegation. Even so, LM relied solely on the misrepresentation related to the Yukon as its basis for rescission.

[4] Even where there is evidence that the claimant participated in the preprocurement fraud, if there is a question of fact, the determination is for the jury. See *Webb*, 335 Mich App at 512-513 ("[A] material question of fact remains regarding whether [the plaintiff] participated in the fraudulent procurement of the insurance policy. If a trier of fact answers that question in the affirmative, then [he] cannot be considered an innocent party.").

[5] Because UIM coverage is optional, "the rights and limitations of such coverage are purely contractual and are construed without reference to the no-fault act." *Rory v Continental Ins Co*, 473 Mich 457, 465; 703 NW2d 23 (2005). PIP benefits are required by the no-fault act, MCL 500.3101 *et seq*., and so the statute governs the rights and limitations of PIP coverage. *Meemic Ins Co v Fortson*, 506 Mich 287, 298; 954 NW2d 115 (2020).

extent it contains *statutory defenses or common-law defenses that have not been abrogated*." *Id*. at 302-303 (emphasis added). Therefore, a no-fault insurer's contractual antifraud provision is only valid to deny PIP coverage if it rests on a statutory defense in the no-fault act or on a common-law defense that has not been abrogated. The no-fault act excludes PIP coverage in certain enumerated circumstances under MCL 500.3113.[6] LM does not assert that any of these statutory defenses to PIP coverage apply here because the no-fault act "does not provide a fraud defense to PIP coverage." *Id*. at 303-304. And "the mere breach of a contract would not entitle the injured party to avoid the contract at common law." *Id*. at 308.

Accordingly, in order to justify rescission of PIP coverage with respect to preprocurement misrepresentations,[7] the insurer must be able to demonstrate *common-law* fraud under equitable principles. See *id*. at 304-305 & n 12. It must be shown that: (1) the alleged fraudulent party made a material representation; (2) the representation was false; (3) the person making the representation knew it was false or acted recklessly in making the statement; (4) the person intended that the opposing party should act upon the representation; (5) the opposing party acted in reliance; and so (6) suffered injury. *Titan Ins Co v Hyten*, 491 Mich 547, 567-568; 817 NW2d 562 (2012).

There is evidence that Bartell made a material and false representation regarding the Yukon and at least a reasonable inference that she knew the representation was false and that she intended LM to rely upon it. However, the "injury" element is missing because the coverage obtained by the misrepresentation is not at issue. That is, there is no claim that the Yukon was involved in the accident or that absent coverage on the Yukon, plaintiff would not have been covered as to the Mariner. Accordingly, LM did not suffer injury through reliance upon the misrepresented fact.

In addition, even accepting LM's contention that Bartell committed fraud when adding the Yukon to the policy, there is no evidence that plaintiff made any false representations. Therefore, while plaintiff is party to the insurance contract, she is an innocent third party to Bartell's misrepresentations. In *Bazzi v Sentinel Ins Co*, 502 Mich 390, 407-410; 919 NW2d 20 (2018), the Supreme Court held that, while an individual's claim as an innocent third party does not preclude an insurer from seeking rescission for fraud, the existence of fraud does not give the insurer an absolute right to rescission.[8] Rather, rescission is equitable in nature and "is granted only in the

---

[6] After the accident giving rise to plaintiff's claim occurred, portions of the no-fault act were amended, effective June 11, 2019, by 2019 PA 21. Because the accident occurred before the amendments went into effect, the amended provisions are not before us. Therefore, this opinion will refer to the no-fault act as it existed on May 7, 2019, the date of the accident. See *Griffin v Trumbull Ins Co*, ___ Mich ___, ___; ___ NW2d ___ (2022) (Docket No. 162419); slip op at 9 n 4.

[7] We will accept for purposes of this appeal LM's contention that the alleged misrepresentation should be construed as preprocurement, rather than postprocurement, fraud. We note, however, that insurers may not rescind PIP coverage on the basis of postprocurement misrepresentations. See *Williams v Farm Bureau Mut Ins Co*, 335 Mich App 574, 586-587; 967 NW2d 869 (2021).

[8] We are not aware of any case addressing whether a named insured may be considered an innocent third party under *Bazzi*. However, LM is unable to articulate—and we are unable to discern—why

-4-

sound discretion of the court." *Univ of Mich Regents v Mich Auto Ins Placement Facility*, __ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 354808); slip op at 3. Trial courts are to "balance the equities" when determining whether an insurer may rescind an insurance policy. *Bazzi*, 502 Mich at 410 (quotation marks and citation omitted). "Rescission should not be granted when the result would be inequitable or unjust." *Id*. "[T]he party seeking rescission has the burden of establishing that the remedy is warranted." *Farm Bureau Gen Ins Co of Mich v ACE American Ins Co*, 337 Mich App 88, 100; 972 NW2d 325 (2021).

In a concurrence in *Farm Bureau Gen Ins Co of Mich*, 503 Mich 903, former Justice MARKMAN articulated five nonexclusive factors courts should consider in "innocent-third party cases" to determine whether rescission would be equitable. We adopted these factors in *Pioneer State Mut Ins Co v Wright,* 331 Mich App 396, 411; 952 NW2d 586 (2020). Applied to the facts of this case, the factors compel the conclusion that rescission would not be equitable as to plaintiff.

Justice MARKMAN provided the following explanations of the five factors:

> First, the extent to which the insurer, in fact, investigated or could have investigated the subject matter of the fraud before the innocent third party was injured, which may have led to a determination by the insurer that the insurance policy had been procured on a fraudulent basis. If the insurer could have with reasonable effort obtained information indicating that the insured had committed fraud in procuring the insurance policy, equity may weigh against rescission because the insurer may be deemed to have acted without adequate professional diligence in issuing and maintaining the policy. [*Farm Bureau Gen Ins Co of Mich*, 503 Mich at 906 (MARKMAN, C. J., concurring).]

This factor favors plaintiff because LM could have, with reasonable diligence, discovered the ownership of the Yukon when Bartell sought to add it to the policy.[9] This misrepresentation was identified by LM after the accident, and LM offers no reasons why doing so earlier would have failed to yield the same information.

> Second, the specific relationship between the innocent third party and the fraudulent insured. If the innocent third party possessed some knowledge of the fraud—perhaps because of a familial or other relationship—equity may weigh in

---

a coinsured should be precluded from being considered an innocent party to another coinsured's fraud. Indeed, in the context of fire-insurance policies, the concept of an "innocent coinsured" is well settled. See e.g., *Williams v Auto Club Group Ins Co*, 224 Mich App 313, 315-319; 569 NW2d 403 (1997) (holding that the intentional acts and fraud exclusion in a fire-insurance policy was precluded by statute from applying to an "innocent coinsured").

[9] While the first factor "does not impose a duty to investigate upon insurers," it does allow courts to equitably consider whether an insurer could have exercised more diligence to discover the misrepresentation earlier. See *Pioneer*, 331 Mich App at 412, 412 n 6.

favor of rescission because that individual is seeking to recover from the insurer despite knowledge of the fraud. [*Id*.]

Given the present record, this factor also weighs in plaintiff's favor. Plaintiff is Bartell's mother and they shared a home. However, plaintiff denies knowledge of Bartell's actions and LM has yet to provide any evidence to suggest that plaintiff was complicit in or had knowledge of the fraud.

Third, the precise nature of the innocent third party's conduct in the injury-causing event. Where the innocent third party acted recklessly or even negligently in the course of the injury-causing event, equity may weigh in favor of rescission because the innocent third party could have avoided the injury by acting more prudently. [*Id*.]

This factor favors plaintiff as the evidence indicates that the driver of the other vehicle was at fault in the accident.

Fourth, whether the innocent third party possesses an alternative avenue for recovery absent enforcement of the insurance policy. Such an avenue for recovery may include, for example, the assigned claims plan or health insurance. Where the innocent third party possesses an alternative means of recovery, equity may weigh in favor of rescission because the insurer need not suffer loss because of the fraud. [*Id*. at 906-907.]

This factor favors plaintiff because LM does not dispute that plaintiff has no alternative basis to recover her medical and work losses. Further, plaintiff would likely be barred from recovery from the Michigan Assigned Claims Plan or a different auto insurer under the one-year-back rule. See *Pioneer*, 331 Mich App at 412-414.

Fifth, whether enforcement of the insurance policy would merely relieve the fraudulent insured of what would otherwise be the insured's personal liability to the innocent third party. That is, whether enforcement of the insurance policy would subject the insurer to coverage for tort liability for an at-fault insured. In such a case, equity may weigh in favor of rescission because enforcement of the policy would transfer liability to the innocent third party from the insured who committed the fraud to the insurer that did not commit wrongdoing. [*Farm Bureau Gen Ins Co of Mich*, 503 Mich at 907 (MARKMAN, C. J., concurring).]

Because Bartell, the fraudulent insured, was not involved in the accident, this factor neither favors rescission nor weighs against it. See *Pioneer*, 331 Mich App at 414; *Farm Bureau*, 337 Mich App at 107.

After setting forth the five factors, Justice MARKMAN went on to say that "[i]n few cases will all of these factors be applicable; in some cases, none will be applicable; and in other cases, additional factors may be applicable." *Farm Bureau Gen Ins Co of Mich*, 503 Mich at 907 (MARKMAN, C. J., concurring). In this case, we also weigh the fact that at the time of the accident plaintiff was not driving the Yukon—the vehicle as to which the allegations of fraud apply—and that she had held insurance with LM since 2014.

In sum, the *Farm Bureau* factors and other considerations weigh against rescission and LM does not identify any factor that weighs in favor of it. It therefore cannot be said that LM has carried its burden of showing that rescission as to plaintiff would be equitable. For these reasons, we conclude that rescission as to plaintiff is not warranted in this case.

## B. UIM

Unlike PIP coverage, UIM coverage is optional and so an insurer may rescind a policy based upon violation of an antifraud policy provision. LM's antifraud provision provides:

> Any changes we make at your request to this policy after inception will be made in reliance upon information you provide. We may void this policy if you or an "insured" have concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, at the time application was made, at the time changes were requested, or any time during the policy period.

The policy language, by its terms, permits "void[ing]" of the policy if *any* insured makes a material misrepresentation. Accordingly, we conclude that as to UIM coverage, Bartell's misrepresentations regarding the Yukon, if material, would allow for rescission. However, LM has not presented any evidence that the misrepresentation was material to the coverage on the Mariner. This Court has equated materiality of a misrepresentation in a no-fault insurance application with reliance by the insurer. *21st Century Premier Ins Co v Zufelt*, 315 Mich App 437, 445-446; 889 NW2d 759 (2016). " 'Reliance may exist when the misrepresentation relates to the insurer's guidelines for determining eligibility for coverage.' " *Id*. at 446, quoting *Lake States Ins Co v Wilson*, 231 Mich App 327, 331; 586 NW2d 113 (1998). But LM has provided no evidence that Bartell's statements concerning the later-added Yukon affected LM's earlier decision to insure the Mariner. In other words, the alleged misrepresentation by Bartell as to the Yukon did not relate to the eligibility for coverage on the Mariner that was previously obtained and as to which no fraud is alleged.

LM relies on the affidavit of Randall Lawrence-Hurt, a LM senior compliance analyst. Notably, Lawrence-Hurt does not state that the alleged fraud by Bartell in adding the Yukon affected the company's earlier decision to insure the Mariner. He states that the allegedly false representation "was integral to and directly influenced LM General's decision to add the 2008 Yukon to [the policy]," but he makes no mention of the decision to insure the Mariner. He also states that "LM General would not have added the 2008 Yukon . . . if true and correct information" regarding it had been provided. Again, he makes no claim that there was any fraud involved in the application for coverage on the Mariner. In the absence of evidence that the misrepresentation was *material* to the decision to insure the Mariner, we conclude that Bartell's alleged misrepresentation was not material to policy's coverage of the Mariner and so was not a basis to rescind coverage on that vehicle.

The purpose of permitting rescission of insurance policies where there has been a misrepresentation is to protect the insurer from having to pay claims that, but for the misrepresentation, it would not have insured. By the same token, however, a misrepresentation that is immaterial to the coverage in question should not be used as an excuse to deny or rescind that coverage.

### III.  CONCLUSION

The trial court properly denied the motion for summary disposition as to PIP benefits because there is no evidence that plaintiff was involved in, or even knew of, Bartell's misrepresentation and the factors adopted in *Pioneer,* 331 Mich App 396, clearly demonstrate that the record evidence leads to a balancing of the equities in plaintiff's favor.  The trial court also properly denied LM's motion for summary disposition as to UIM benefits because although the contract provides for rescission, it is limited to "material" misrepresentations.  And in this case, the misrepresentation was material only as to the Yukon, not the Mariner.

Affirmed.  Appellee may tax costs as the prevailing party.  MCR 7.219.

/s/ Douglas B. Shapiro
/s/ Michelle M. Rick
/s/ Kristina Robinson Garrett